En el Tribunal Supremo de Puerto Rico

| IN RE: | Conducta Profesional |
|---|---|
| FRED H. MARTINEZ , LAWRENCE ODELL Querellados | 99TSPR53 |

Número del Caso: AB-98-46

Abogados de la Parte Querellante: Hon. Carlos Lugo Fiol
Procurador General

Lcda. Edda Serrano Blasini
Procuradora General Auxiliar

Abogados de la Parte Querellada: Lcdo. Rubén T. Nigaglioni
(McConnell Valdés)

Abogados de la Parte Interventora:

Tribunal de Instancia: Superior

Juez del Tribunal de Primera Instancia:

Tribunal de circuito de Apelaciones:

Juez Ponente:

Fecha: 4/12/1999

Materia:

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

| | | |
|---|---|---|
| Fred H. Martínez, | AB-98-46 | Conducta |
| Lawrence Odell | | Profesional |

PER CURIAM

San Juan, Puerto Rico, a 12 de abril de 1999

En marzo de 1998, el licenciado Ralph J. Sierra, Jr., instó contra los licenciados Fred H. Martínez y Lawrence Odell una querella por conducta profesional impropia. En esencia, alegó que los querellados afirmaron bajo juramento hechos que sabían eran falsos.

Los hechos se remontan al 1981, cuando mediante la escritura pública número 68, otorgada el 9 de marzo de 1981 ante el notario público Rafael Kodesh Baragaño, se creó el fideicomiso del plan de pensiones para beneficio de los miembros y asociados del entonces bufete de abogados "Martínez, Odell, Calabria & Sierra", una sociedad profesional organizada al amparo de las leyes del Estado

Libre Asociado de Puerto Rico. En dicha escritura se hizo referencia a una resolución de la sociedad de abogados, ("Certificate of Partnership Action"), con fecha de 9 de marzo de 1981, en la cual se afirmó que los licenciados querellados, junto al licenciado Antonio J. Colorado, eran los únicos socios del bufete. Esta certificación fue utilizada por el notario como fundamento de la autoridad de los otorgantes de la escritura pública y se incorporó a la misma como anejo.[1]

---

[1] **El certificado, además, contenía información pertinente a la creación y administración del fideicomiso que se creaba mediante escritura pública.**

Eventualmente, el bufete "Martínez, Odell, Calabria & Sierra" se disolvió y se creó el bufete "Martínez, Odell & Calabria", el cual preservó el mismo plan de pensiones. El querellante, afirma que al momento de otorgar la escritura tanto él, como el licenciado José Luis Calabria eran socios con iguales derechos que los querellados.[2] Sostiene que la afirmación contenida en la resolución de la sociedad que, a su vez, fue incorporada en la escritura pública, sólo tuvo como objetivo excluir del plan de pensión a los abogados que, como él, en esa fecha eran socios del bufete. Aduce, finalmente, que la conducta de los querellados contravino los cánones 35 y 38 del Código de Ética Profesional.

Examinadas las alegaciones del querellante, le ordenamos al Procurador General que rindiera un informe en torno a las imputaciones hechas contra los querellados. El Procurador cumplió con su encomienda. Es de su opinión que la conducta de los querellados violenta las disposiciones del Canon 35 de Etica Judicial.

## II.

De entrada, debemos aclarar que en el presente caso la querella instada por el licenciado Sierra Jr. no versa sobre la relación típica abogado-cliente. Se origina, más bien, como consecuencia de una relación de negocios de una sociedad profesional de abogados. Por otro lado, el Procurador General nos llama la atención sobre los innumerables conflictos habidos entre las partes originados como consecuencia de la disolución de la sociedad profesional. A su juicio, esta animosidad exige un minucioso examen de la evidencia aportada en este procedimiento disciplinario. Dicho lo anterior, examinemos las alegaciones.

Los querellados sostienen que el plan de pensiones que se estructuró en la referida escritura pública estaba vigente desde 1979, fecha para la

---

[2] **Surge del expediente que el licenciado José L. Calabria se unió al bufete el 1 de enero de 1980 y el querellante el 1 de agosto de 1980.**

cual el licenciado Sierra, Jr. no tenía vínculo alguno con el bufete. Sostienen, además, que la escritura pública otorgada en 1981 sólo pretendía oficializar dicho plan, por lo que sólo los querellados y el licenciado Colorado podían otorgar la escritura y la certificación objeto de la presente querella. Aducen, por lo tanto, que lo expresado en la escritura reflejaba la realidad social del bufete para el 28 de septiembre de 1979, fecha en que comenzó el plan.

Según la prueba, son ciertas las alegaciones de los querellados en términos de que el plan de pensiones oficializado en la escritura pública objeto de la presente querella fue instaurado en fecha anterior. En primer lugar, el propio plan de pensión establece la fecha del 28 de septiembre de 1979 como su fecha de efectividad. En segundo lugar, existen varios documentos en el expediente del caso y que la Oficina del Procurador General nos enumera, que sostienen las alegaciones de los querellados sobre este aspecto: carta de "Corporation Life", suscrita por el Sr. Jack H. Odell, con fecha de 1 de septiembre de 1979; Estado de Cuenta de la "American Variable Annuity Life Assurance Co." de 25 de abril de 1980; el acuerdo de honorarios suscrito por los licenciados Colorado, Martínez y Odell con "Pension Planners de Puerto Rico Inc.", suscrito el 16 de mayo de 1980 en el que se delegó en esta compañía la administración del plan de retiro; y la declaración jurada del licenciado José L. Calabria, a quien el querellante identifica que fue excluido del plan de retiro, y quien afirma que antes de su entrada al bufete tuvo conocimiento de que existía un plan de pensiones al que se efectuaban aportaciones periódicas. Por último, la formalización retroactiva en la escritura objeto de la presente querella disciplinaria fue validada, sin objeción alguna, por el Departamento de Hacienda y el Departamento del Trabajo Federal al tramitar el plan en esas agencias.

A pesar de lo anterior, no hay duda de que al momento de otorgar la escritura pública en la que se constituyó el fideicomiso, el abogado

querellante y el licenciado Calabria formaban parte del bufete en calidad de socios con iguales derechos. Por lo tanto, aunque la escritura tenía como finalidad formalizar un plan preexistente, lo cierto era que al momento de su otorgamiento, 9 de marzo de 1981, la realidad era distinta a la expresamente afirmada por los querellados. En este sentido, lo afirmado bajo juramento en términos de que los abogados querellados eran en 1981 los únicos socios del bufete, no era cierto.

### III.

El Código de Etica Profesional impone a todo abogado el deber de mantener relaciones cordiales y respetuosas con sus compañeros abogados. En este sentido, proscribe conducta impropia entre abogados al tramitar pleitos, Canon 29, 4 L.P.R.A. Ap. IX C.29, In re Córdova González, 125 D.P.R. 555 (1990), y les impone un deber de sinceridad y honradez ante los tribunales, frente a sus representados y al relacionarse con sus compañeros de profesión, Canon 35, 4 L.P.R.A. Ap. IX, C. 35.

En específico, el canon 35 establece, en parte, lo siguiente:

> La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.

> No es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho. [...].

> El abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar afidávit u otros documentos, y al presentar causas. [...]. 4 L.P.R.A. Ap. IX C. 35 (énfasis suplido).

Estas obligaciones y deberes constituyen normas mínimas de conducta que sólo pretenden preservar el honor y la dignidad de la profesión. Por ello, deben ser observadas por los abogados, no sólo en la tramitación de pleitos sino también en toda faceta en la que se desempeñen.

En armonía con lo anterior, con su firma, un abogado no puede suscribir hechos inconsistentes con la verdad. Alonso García v. Comisión

Industrial, 102 D.P.R. 752, 755 (1974). Es su responsabilidad asegurarse de que los hechos que suscribe correspondan con la realidad.

Somos de opinión que en el presente caso, la actuación de los querellados contravino el canon 35 del Código de Etica Judicial. La afirmación de los abogados en la escritura objeto de la presente querella, como antes afirmamos, fue contraria a la verdad. Ello se aparta de lo preceptuado en el canon 35 que impone a los abogados la obligación de "ajustarse a la sinceridad de los hechos [...] al redactar afidávit u otros documentos". Este deber se lesiona aún cuando la falta a la verdad no haya ocurrido intencionalmente o con el deliberado objetivo de engañar. In re Rivero Arvelo y Ortiz Velázquez, 132 D.P.R. 849 (1993); In re Chaar Cacho, 123 D.P.R. 655 (1989). En consecuencia, resolvemos que los querellados incurrieron en conducta contraria al canon 35 del Código de Etica Profesional. Si los abogados querellados pretendían formalizar un plan preexistente en el que los demás socios no tenían derecho alguno, lo apropiado hubiera sido aclarar ese objetivo expresamente en la escritura pública y en la resolución de la sociedad profesional, manteniendo fidelidad a la verdad al momento de suscribir tales documentos.

A pesar de lo anterior, del expediente no surge evidencia alguna que demuestre que la actuación de los querellados fuese hecha con el objetivo deliberado de defraudar a los demás socios. De hecho, del expediente no surge que el querellante haya sufrido perjuicio alguno. Ello, si bien debe ser considerado en la evaluación de la presente querella, no priva a este Tribunal de su jurisdicción disciplinaria. En vista de ello, y de las circunstancias particulares que rodean el reclamo del licenciado Sierra Jr., en esta ocasión limitaremos nuestra intervención disciplinaria a censurar enérgicamente a los abogados Fred H. Martínez y Lawrence Odell por las actuaciones que le han sido imputadas.

Se emitirá la correspondiente sentencia.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

    Fred H. Martínez           AB-98-46        Conducta
    Lawrence Odell                             Profesional

SENTENCIA

San Juan, Puerto Rico, a 12 de abril de 1999

       Por los fundamentos expuestos en la Opinión Per Curiam que antecede, lo cual se hace formar parte íntegra de la presente Sentencia, se censura enérgicamente a los abogados Fred H. Martínez y Lawrence Odell por la conducta imputada en la querella objeto del presente recurso.

       Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López disiente con opinión escrita. El Juez Asociado señor Fuster Berlingeri no intervino.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**


**In re:**

| | | |
|---|---|---|
| **Fred H. Martínez** | **AB-98-46** | **CONDUCTA** |
| **Lawrence Odell** | | **PROFESIONAL** |


**OPINION DISIDENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LOPEZ**

**San Juan, Puerto Rico, a 12 de abril de 1999**


El pasar de los años, la vida, nos enseñan que el más preciado bien que un ser humano le puede dejar como legado a su familia <u>no</u> puede ser calculado desde un punto de vista económico; ello así ya que la importancia y el valor de un nombre y una reputación libre de manchas <u>no</u> se calcula a base de dólares y centavos.

Específicamente en cuanto a abogados se trata, el buen nombre y el éxito de éstos <u>no</u> se mide por lo abultado de su cuenta bancaria. Ello dependerá, entre otros, del respeto, consideración y deferencia que le tengan sus conciudadanos; actitudes que el abogado se gana, día a día, a base de la calidad de su trabajo, su laboriosidad y su honradez.

Esa reputación, ese respeto y deferencia, ese buen nombre, se afecta, naturalmente, cuando el cuerpo regente de la profesión de abogado en esta jurisdicción --el Tribunal Supremo de Puerto Rico-- en el ejercicio de su poder inherente de reglamentar la profesión, In re: Franco Soto, 115 D.P.R. 740 (1984), entiende procedente disciplinar a un abogado ya sea desaforando permanentemente o suspendiendo temporalmente a éste del ejercicio de la profesión; ya sea amonestando o censurándolo. Debido, precisamente, a ello es que este Tribunal, al ejercitar ese poder, viene en la ineludible obligación de actuar con extrema cautela y mesura.

Lo contrario tiene consecuencias trágicas. Debe mantenerse presente que una actuación arbitraria de este Tribunal en asuntos disciplinarios no sólo "mancha", de por vida, la reputación y el buen nombre de un compañero de profesión sino que sitúa a los integrantes de este Tribunal en una situación insostenible: la comisión de una injusticia.

I

En el Informe que el Procurador General de Puerto Rico, Hon. Carlos Lugo Fiol, le rindiera a este Tribunal sobre este asunto se expresa, en síntesis y en lo pertinente, que: aun cuando los abogados "...tenemos el deber de evitar que los compañeros [abogados] incurran en conducta impropia y lesionen la dignidad de la profesión, tal deber tiene que cumplirse con mesura y objetividad sin permitirse que las emociones y rencillas personales contaminen el proceso" (énfasis suplido)[3]; que las alegaciones, tanto de la parte querellante como de la parte querellada, constituyen "...evidencia de la animosidad tan extrema y la rivalidad tan grande que este grupo de letrados que una vez componían una sociedad --como socios y asociados-- han desatado entre unos y otros"[4]; que "...en esta conducta, advertimos, incurren ambas partes pero muy en especial el quejoso [Lcdo. Sierra, Jr.], quien en su afán de que se censure y sancione a los querellados ha presentado documentación impertinente e irrelevante."[5]; que resulta lamentable "...la forma y manera en que [estos abogados] se atacan a la moral, dignidad y profesionalismo. Especialmente como ataca a la dignidad personal y profesional el quejoso Ralph J. Sierra, Jr., al Lcdo. Fred Martínez. Consideramos esta actuación impropia e innecesaria." (Enfasis suplido y en el original)[6]; y que el quejoso, Lcdo. Sierra, Jr., no se querella contra el Lcdo. Antonio J. Colorado, el cual también suscribió la documentación en controversia, "...porque el licenciado Colorado no forma parte de la batalla legal a la cual hemos hecho referencia".[7]

Hagamos un alto. Resulta obvio que no nos enfrentamos a la situación de la voz de alerta, o denuncia, de parte de un abogado que dirige nuestra atención hacia la conducta observada por otro letrado, la cual el primero, honestamente, considera lesiva a la imagen de la abogacía; denuncia que únicamente es producto del interés de proteger la dignidad y buen nombre de la profesión de abogado.

Todo lo contrario. Nos encontramos ante una lamentable situación, demostrativa la misma de cuan frágiles somos los seres humanos. Aquí no hay interés alguno de proteger la profesión de abogado y, mucho menos, de vindicar la dignidad de la misma. Aquí el deseo de venganza "salta a la vista y hiere la retina"[8]. Peor aún, se trata de una persecución selectiva, cuyo único propósito es el hacerle daño a otros compañeros.

¿Debe fomentar este Tribunal la ocurrencia, y repetición, de esta

---

[3] **Véase pág. 9 del Informe del Procurador General de Puerto Rico, de fecha 2 de septiembre de 1998.**
[4] **Ibid.**
[5] **Ibid, pág. 18.**
[6] **Ibid pág. 17.**
[7] **Ibid pág. 12.**
[8] **In re: Roldán González, 113 D.P.R. 238, 242 (1982).**

clase de situaciones? Estamos conscientes de que algunos contestarán la anterior interrogante expresando que este Foro tiene la obligación de disciplinar a un abogado que haya violado los Cánones de Etica, independientemente de cuál es la fuente de información y el propósito detrás de la misma.

Ello, naturalmente, requiere que examinemos la situación en sus méritos.

II

Expresa el Señor Procurador General, en el antes mencionado Informe, que: un análisis de la situación, en especial de la escritura de constitución de fideicomiso, y todos sus anejos, le lleva a concluir que "...esta escritura se otorgó únicamente con el propósito de validar un plan de pensión del bufete Colorado, Martínez y Odell que, según los documentos que se anejan al expediente, había sido iniciado desde mucho antes de otorgarse la escritura y de haber entrado en sociedad el quejoso Lcdo. Ralph Sierra, Jr." (énfasis suplido)[9]; que a pesar "...de que lo señalado en la escritura no reflejara la verdad del momento, no vemos, ni de la propia escritura, ni de sus anejos, la intención de los querellados de defraudar a los demás socios y asociados. En vez, creemos que el fin único de la misma era validar o formalizar un acto ya incoado con el propósito de poderlo registrar en las agencias concernidas" (énfasis suplido)[10]; que de los documentos "...que componen el expediente de la queja no surge que los licenciados Martínez y Odell hayan sometido información falsa al Departamento de Hacienda [de P.R.] y al Departamento del Trabajo Federal"[11]; que, de hecho, todas las agencias concernidas, tanto estatales como federales, convalidaron y aprobaron el referido plan de pensiones[12]; que, gracias al plan establecido por los Lcdos. Martínez y Odell, surge del expediente del caso que "...muchos empleados y socios del bufete, incluyendo el propio quejoso, quien a través de los años pudo acumular una cantidad bastante razonable y pudo traspasarla luego a su propio plan de retiro establecido con otros socios más" (énfasis suplido)[13]; que, a pesar del minucioso análisis realizado por el Procurador General, éste no ha encontrado "...de qué forma pudo haberse afectado el quejoso con el plan establecido".[14]

Ante estos hechos incuestionables, ¿procede disciplinar a los Lcdos. Martínez y Odell? Una mayoría de los integrantes del Tribunal contesta dicha interrogante en la afirmativa. Entiende la Mayoría que los abogados querellados violaron las disposiciones del Canon 35 del Código de Etica Profesional[15] --que requiere que el abogado se ajuste "...a la sinceridad de los hechos..."-- por cuanto, al suscribir la escritura en controversia hicieron una afirmación que "...fue contraria a la verdad".

Discrepamos. Es correcto que, al otorgarse la escritura en controversia, habían otros socios. Estos nuevos integrantes de la sociedad, sin embargo, no eran socios al establecerse el plan de pensiones en el bufete en el año 1979. Estos nuevos socios no podían convalidar, como les era requerido por las agencias pertinentes, lo que ellos no habían llevado a cabo. Los únicos socios que podían hacerlo lo eran los Lcdos. Colorado, Martínez y Odell.

A lo sumo --y en vista de las específicas determinaciones y conclusiones a las que llega el Procurador General sobre que la actuación de estos abogados fue de buena fe-- lo más que se puede decir es que los referidos abogados incurrieron en un error de juicio, honesto y sincero,

---

[9] **Ibid pág. 13.**
[10] **Ibid.**
[11] **Ibid pág. 15.**
[12] **Ibid pág. 13.**
[13] **Ibid pág.15.**
[14] **Ibid pág. 16.**
[15] **4 L.P.R.A. Ap. IX, c.35.**

al suscribir la escritura en controversia. Véase: Federación de Pescadores de Playa Picúas, Inc. v. U.S. Industries, Opinión y Sentencia de 14 de marzo de 1994.

Ello, en nuestra humilde opinión, no constituye causa, ni da base alguna, para que este Tribunal ejerza su poder disciplinario y sancione --mediante el mecanismo de la amonestación-- a los Lcdos. Fred H. Martínez y Laurence Odell, mancillando así su reputación para siempre.

Nos negamos a ser cómplices de la animosidad y de la sed de venganza; sentimientos que conforme el Informe del Procurador General, son la razón de ser de la queja presentada contra los Lcdos. Martínez y Odell.

FRANCISCO REBOLLO LOPEZ
Juez Asociado