EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br> Lcdo. Heriberto Montalvo Guzmán | 2005 TSPR 82 <br><br> 164 DPR _____ |

Número del Caso: AB-2004-186

Fecha: 20 de mayo de 2005

Abogado del Peticionario:

Lcdo. Miguel A. Ojeda Martínez

Oficina del Procurador General:

Lcda. Noemí Rivera de León
Procuradora General Auxiliar

Materia: Conducta Profesional
(La suspensión será efectiva el 3 de junio de 2005 fecha en que se le notificó al abogado de su suspensión inmediata.)

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Lcdo. Heriberto Montalvo Guzmán

AB-2004-186

PER CURIAM

San Juan, Puerto Rico, a 20 de mayo de 2005

I

Tenemos ante nuestra consideración una queja en contra del licenciado Heriberto Montalvo Guzmán, por alegadamente otorgar unas escrituras en las cuales los comparecientes nunca comparecieron ante él, por lo cual el letrado estaba dando fe de la comparecencia de éstos, lo cual era completamente falso.

Esta queja surge en consecuencia y como parte del caso <u>Antoinette Bakhos viuda de Tartak, Ex Parte</u>[1], relacionado a asuntos de la sucesión de la familia Tartak.  En  este caso se dilucidaban

_____

[1] Civil número DJV91-2203 (504).

controversias surgidas de la presentación de ciertas escrituras públicas en el Registro de la Propiedad.

El licenciado Montalvo Guzmán otorgó la escritura número cuatro (4), sobre compraventa, el 6 de noviembre de 1998, en la cual alegadamente el señor Rubén Rivera Pérez adquirió de la señora Sara Tartak, Antoinette Bakhos Sarkis de Tartak y el señor José Tartak Bejos, el cincuenta porciento (50%) de una propiedad inmueble ubicada en Río Piedras por la suma de ochocientos mil dólares ($800,000). El allí comprador, señor Rivera Pérez adquirió el otro cincuenta porciento (50%) de la propiedad del señor Pedro Tartak y su esposa Dalel Tartak, mediante otro negocio de compraventa, en la escritura número diecisiete (17) de 19 de mayo de 1990, ante el notario público Antonio Andino. El licenciado Montalvo Guzmán otorgó otra escritura de compraventa, la número cinco (5), también el 6 de noviembre de 1998, en la cual el señor Rivera Pérez alegadamente le vendió a Desarrolladores de Vivienda de Interés Social la misma propiedad por la suma de un millón doscientos mil dólares ($1,200,000).[2]

El Tribunal de Primera Instancia, Sala Superior de Bayamón, mediante Resolución de 3 de mayo de 1999, concluyó que las mencionadas escrituras de compraventa, la número cuatro (4), otorgada ante el licenciado Montalvo Guzmán y

---

[2] Surge del Informe del Procurador General que estas escrituras realmente no son la número 4 y 5 sino la número 2 y 3, según corroborado en la copia del Índice Notarial del mes de noviembre de 1998 del querellado.

la número diecisiete (17), otorgada ante el notario público Antonio Andino, eran ilegales y no establecían derecho alguno. De dicha Resolución surge, que a la luz de la prueba presentada, a la fecha del otorgamiento de la escritura número diecisiete (17), ante el notario público, Antonio Andino, la señora Dalel Tartak había fallecido hacía tres (3) años.

El 12 de marzo de 2004, mediante carta, compareció el licenciado Montalvo Guzmán con su contestación a la queja de epígrafe. **Admitió que otorgó las escrituras el 6 de noviembre de 1998 y que los otorgantes de éstas nunca comparecieron ante él, ya que cuando las autorizó ya estaban firmadas. Expresó que aceptaba haber violado los Cánones de Ética y que estaba profundamente arrepentido.** Además, señaló que para la fecha de los hechos estaba atravesando por una fuerte crisis emocional y psíquica.

El 16 de agosto de 2004, el Procurador General sometió un informe relacionado a la presente queja. En dicho informe concluye que el licenciado Montalvo Guzmán incurrió en una grave violación a la fe pública notarial, Artículo 2 de la Ley Notarial[3], y al Canon 35 de Ética Profesional[4].

Le concedimos al licenciado Montalvo Guzmán veinte (20) días para expresarse sobre dicho informe. El 16 de febrero de 2005, compareció y **una vez más aceptó su responsabilidad.** Nos solicitó tomáramos en consideración

_____

[3] 4 L.P.R.A. sec. 2002.

[4] Canon 35: Sinceridad y Honradez, 4 L.P.R.A. Ap. IX, C. 35.

las circunstancias personales y de salud que lo afectaban al momento de los hechos, de su depresión severa y de su estado de ánimo decaído.

## II

La profesión de la abogacía está revestida de un alto interés público que requiere de una estricta observancia y reglamentación. [5] Los notarios tienen una gran responsabilidad con la fe pública notarial y una estricta obligación de cumplir cabalmente con la ley que regula sus funciones. La notaría es una función que requiere cuidado y que debe ser ejercida con sumo esmero y celo profesional, y en el despliegue de esta función, el notario está obligado a cumplir estrictamente con la Ley Notarial y los Cánones de Ética Profesional, de lo contrario, se expone a las sanciones disciplinarias correspondientes.[6]

El Artículo 2 de la Ley Notarial, *supra*, dispone lo siguiente:

> El notario es el profesional del Derecho que ejerce una función pública, autorizado a dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle[s] autoridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función

---

[5] *In re Pagán Ayala*, 115 D.P.R. 814, 815 (1984); *In re Negrón Negrón*, res. 27 de diciembre de 2004, 163 D.P.R.___, 2005 J.T.S. 10.

[6] *In re Vera Vélez*, 148 D.P.R. 1, 6-7 (1999).

personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento.

Un notario público que falta a la veracidad de los hechos incurre en una de las faltas más graves que pueda cometer, ya que la certificación de un hecho falso constituye un acto detrimental a la fe pública, y por lo tanto al Artículo 2 de la Ley Notarial, antes mencionado.[7] Los notarios son los funcionarios encargados de garantizar la autenticidad de las firmas hechas ante sí mediante la fe pública notarial.[8]

Cuando un notario público viola la fe pública notarial, al no exponer la veracidad de unos hechos, automáticamente viola el Canon 35 del Código de Ética Profesional, *supra*.[9] Dicho canon dispone, en lo aquí pertinente, lo siguiente:

> La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.
> (...)
> El abogado debe ajustarse a la sinceridad de los hechos al examinar testigos, al redactar affidávit u otros documentos, y al presentar causas.(...)

Como se desprende, este canon impone a todo abogado unas normas mínimas de conducta, indispensables para

---

[7] *In re* Peña Clós, 135 D.P.R. 590 (1994).

[8] *In re* Charbonier Laureano, 156 D.P.R___; 2002 J.T.S 56.

[9] *In re* Aponte Berdecía, 161 D.P.R.___; 2004 J.T.S.32.

preservar el honor y la dignidad de la profesión.[10] Un abogado viola este canon cuando hace constar falsamente, bajo su fe notarial, la comparecencia de unos otorgantes en una escritura o cuando afirma en ésta un hecho falso.[11]

Hemos establecido que para determinar la sanción disciplinaria aplicable a un abogado querellado, podemos tomar en cuenta factores como la reputación del abogado en su comunidad, el previo historial de éste, si es su primera falta, **la aceptación de la falta y su sincero arrepentimiento**, si se trata de una conducta aislada, el ánimo de lucro que medió en su actuación, resarcimiento al cliente y cualesquiera otras consideraciones ya bien atenuantes o agravantes que medien, a tenor con los hechos.[12]

### III

El licenciado Montalvo Guzmán, admitido al ejercicio de la abogacía el 10 de enero de 1986 y a la notaría el 16 de enero de 1987, incurrió en una falta a la fe pública notarial, por lo que incurrió en violación al Artículo 2 de la Ley Notarial, *supra*, y al Canon 35 de Ética Profesional, *supra*. Su comportamiento, independientemente de su estado de ánimo o psicológico, fue uno contrario a los principios

---

[10] *In re* López de Victoria Brás, res. 22 de septiembre de 2004, 163 DPR____; 2004 J.T.S.185.

[11] *In re* Tejada Rivera, 155 D.P.R___(2001), 2001 J.T.S. 138; *In re* Martínez Odell, 148 D.P.R. 49 (1999).

[12] *In re* Martínez Lloréns, 158 D.P.R.___; 2003 J.T.S. 16 ; *In re* Vélez Barlucea, 152 D.P.R. 298, 310-311 (2000).

éticos que gobiernan a esta comprometida profesión. No obstante, debemos darle algún crédito a la oportuna y sincera aceptación de los errores cometidos y al arrepentimiento manifestado. El aceptar la comisión de errores significativos y arrepentirse de los mismos, no justifica la conducta incurrida, ni le resta méritos a la importancia de disciplinar a un abogado por incurrir en tal conducta. No obstante, puede ser una circunstancia atenuante al momento de disponer la medida disciplinaria a imponer. El licenciado Montalvo Guzmán ha aceptado sus errores y se ha arrepentido de haberlos cometido.

Por los fundamentos antes expresados, se dictara Sentencia decretando la suspensión indefinida e inmediata de Heriberto Montalvo Guzmán del ejercicio de la notaría en Puerto Rico.

Se había ordenado, mediante Resolución del 10 de diciembre de 2004, la incautación preventiva de la obra notarial del licenciado Montalvo Guzmán. De no haberse incautado la totalidad de dicha obra, se ordena al Alguacil General de este Tribunal que proceda con la misma.

Se le impone al licenciado Montalvo Guzmán el deber de notificar a todos sus clientes de su presente inhabilidad de ejercer la notaría, les devuelva cualesquiera honorarios recibidos por trabajos no realizados e informe oportunamente de su suspensión a los distintos foros judiciales y

administrativos del país. Además, deberá certificarnos en treinta días del cumplimiento de estos deberes.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

                                           AB-2004-186
Lcdo. Heriberto Montalvo Guzmán

SENTENCIA

San Juan, Puerto Rico, a 20 de mayo de 2005

Por los fundamentos antes expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia decretando la suspensión indefinida e inmediata de Heriberto Montalvo Guzmán del ejercicio de la notaría en Puerto Rico.

Se le impone el deber de notificar a todos sus clientes de su presente inhabilidad de seguir ejerciendo la notaría, les devuelva cualesquiera honorarios recibidos por trabajos no realizados como notario público e informe oportunamente de su suspensión a los distintos foros judiciales y administrativos del país. Además, deberá certificarnos en treinta días del cumplimiento de estos deberes.

De no haberse incautado la totalidad de la obra notarial del licenciado Montalvo Guzmán, tal como se ordenó en la Resolución del 10 de diciembre de 2004, el Alguacil General de este Tribunal procederá a incautar la misma y entregarla a la Oficina de Inspección de Notarías incluyendo su sello notarial.

Notifíquese personalmente al licenciado Montalvo Guzmán con copia de la Opinión que antecede y de esta Sentencia.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo.  El Juez Asociado señor Rebollo López no intervino.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo