EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>Rubén Hernández Rosario | 2007 TSPR 34<br><br>170 DPR _____ |

Número del Caso: CP-2003-17

Fecha: 23 de enero de 2007

Oficina del Procurador General:

> Lcda. Cynthia Iglesias Quiñones
> Procuradora General Auxiliar
>
> Lcda. Miriam Soto Contreras
> Procuradora General Auxiliar
>
> Lcda. Maite Oronoz Rodríguez
> Subprocuradora General

Abogado de la Parte Querellada:

> Por Derecho Propio

Materia: Conducta Profesional
        (La suspensión del abogado advino final y firme el
        día 5 de marzo de 2007)

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:



CP-2003-17


Rubén Hernández Rosario




PER CURIAM


San Juan, Puerto Rico, a 23 de enero de 2007.

El licenciado Rubén Hernández Rosario, en adelante el licenciado Hernández, fue admitido al ejercicio de la abogacía el 3 de noviembre de 1960 y al ejercicio del notariado el 4 de noviembre de 1985.

Por asuntos relacionados a una demanda sobre "*familia erciscundae* y daños y perjuicios", el matrimonio compuesto por el señor Goes Rodríguez Ongay y la señora Irene Morales Cruz, en adelante los esposos Rodríguez Morales, así como la señora Iris Rodríguez Ongay, presentaron quejas ante este Foro contra el referido abogado.

Veamos los hechos que dieron pie al ejercicio de nuestra jurisdicción disciplinaria.

II

La señora Esther Ongay Miranda falleció en estado de viudez el 12 de marzo de 1996. Al morir dejó como únicos y universales herederos a sus siete (7) hijos: Iris, Marilú, Luz Esther, Darío, Goes, Rafael y Gudelia, todos de apellidos Rodríguez Ongay, en adelante la sucesión. Entre los bienes de su caudal hereditario se encontraba una propiedad inmueble, sujeta a división, sita en el Municipio de Jayuya. Esta propiedad es, en esencia, el haber hereditario que origina el presente procedimiento disciplinario. Veamos.

El 20 de septiembre de 1997, Iris, Marilú, Luz Esther, Darío y Goes Rodríguez Ongay, en adelante los demandantes, interpusieron una demanda sobre *"familia erciscundae* y daños y perjuicios"* contra sus hermanos Rafael y Gudelia Rodríguez Ongay, en adelante los demandados. En la referida acción civil, los demandantes alegaron, entre otras cosas, que el demandado, Rafael Rodríguez Ongay, había realizado actos de dominio sobre ciertos bienes de la sucesión sin obtener el consentimiento de los demandantes. Alegaron, además, que el demandado se había beneficiado económicamente con tales actuaciones y que había afectado adversamente los intereses económicos y propietarios de los demandantes miembros de la sucesión. Solicitaron la división de los bienes hereditarios y la restitución del dinero que obtuvo el demandado en virtud de sus actuaciones sobre las propiedades de la sucesión. Finalmente, solicitaron que se le ordenara al señor Rafael

Rodríguez Ongay desistir de todo acto relacionado con dichas propiedades.

En la referida acción civil, los demandantes estuvieron representados por el licenciado Jaime Rivera Sotomayor, mientras que los demandados contrataron los servicios profesionales del licenciado Hernández.

Luego de varios trámites procesales en dicho pleito, los esposos Rodríguez Morales y la señora Iris Rodríguez Ongay, presentaron el 28 y el 30 de marzo de 2002, respectivamente, las quejas AB-2002-106 y AB-2002-114 contra el licenciado Hernández.

De las quejas presentadas contra el licenciado Hernández surge que para el 20 de febrero de 2002, éste, **fungiendo como notario, mientras era abogado de los demandados en el pleito sobre "_familia erciscundae y daños y perjuicios_", autorizó una escritura de compraventa, mediante la cual uno de los demandantes en dicho pleito, el señor Goes Rodríguez Ongay le vendió a su hermano, señor Rafael Rodríguez Ongay, demandado de autos, su participación hereditaria, consistente de una séptima parte (1/7), sobre el bien inmueble sito en Jayuya**. El precio convenido por las partes fue de diez mil dólares ($10,000), de los cuales cinco mil dólares ($5,000) fueron entregados al señor Goes Rodríguez Ongay en el acto de otorgamiento de escritura, mientras que los restantes cinco mil ($5,000) serían pagaderos en un plazo de noventa (90) días. Asimismo, se desprende de las referidas quejas que el licenciado Hernández autorizó dicha escritura de compraventa a espaldas del Tribunal de Primera Instancia, así como del

licenciado Rivera Sotomayor, abogado de los demandantes en dicho pleito.

Los esposos Rodríguez Morales indicaron en su queja que la señora Irene Morales Cruz era la tutora legal de su esposo, señor Goes Rodríguez Ongay, toda vez que éste está incapacitado por ser veterano del conflicto de Vietnam. Indicaron, además, que, al momento de otorgar la escritura de compraventa, este último entendió que, mediante la referida transacción notarial, su hermano le había prestado una cantidad dinero. Finalmente, reseñaron que el precio de la compraventa, ascendente a la cantidad de diez mil dólares ($10,000), era irrisorio y no correspondía al valor real de la participación hereditaria del señor Goes Rodríguez Ongay en la finca sita en Jayuya.

Por otra parte, la señora Iris Rodríguez Ongay indicó en su queja de 30 de marzo de 2002, que el licenciado Hernández nunca notificó sobre el otorgamiento de la escritura al abogado de los demandantes. Esgrimió, además, que al momento en que se llevó a cabo la referida compraventa, el señor Goes Rodríguez Ongay se encontraba confundido. Puntualizó que la actuación del licenciado Hernández era contraria a derecho y a los Cánones de Ética Profesional, toda vez que éste, alegadamente, actuó únicamente movido por sus intereses personales. Finalmente, solicitó se anulara la referida escritura de compraventa.

El licenciado Hernández presentó sus contestaciones a las referidas quejas los días 18 de junio y 21 de agosto de 2002. Explicó que actuó conforme se lo habían solicitado las

partes otorgantes de la escritura de compraventa. Arguyó, además, que el abogado de los demandantes, licenciado Rivera Sotomayor, le informó, antes del acto de otorgamiento de la escritura, que los miembros de la sucesión estaban próximos a llegar a un acuerdo sobre la división de los bienes hereditarios. Asimismo, indicó que, alegadamente, el licenciado Rivera Sotomayor le comunicó su interés de concluir el pleito, trabado entre los miembros de la sucesión, a la brevedad posible toda vez que éste había aceptado un empleo gubernamental en una agencia administrativa. Reseñó, entre otras cosas, que el señor Goes Rodríguez Ongay le expresó su deseo de dar por terminado todo lo relacionado con su participación en la herencia de su madre ya que interesaba regresar a los Estados Unidos, lugar donde ubicaba su residencia. Expuso, en adición, que el acuerdo entre los hermanos otorgantes de la escritura de compraventa se llevó a cabo antes de la visita a su oficina y que éstos siempre le manifestaron su intención de realizar una compraventa. Puntualizó que las partes concernidas en dicho negocio jurídico tuvieron la oportunidad de leer el documento y que luego él, como alegadamente es su costumbre, leyó el documento en voz alta para que las partes pudieran aclarar cualquier duda. Asimismo, indicó que, a su entender, el señor Goes Rodríguez Ongay lucía ser una persona articulada en su vocabulario, de buenos modales y vestimenta impecable. Además, puntualizó, que los hermanos otorgantes parecían tener una relación armónica. En consecuencia, el licenciado Hernández coligió que el señor Goes Rodríguez

Ongay estaba capacitado para otorgar la escritura de compraventa. Finalmente, indicó que posteriormente le recomendó a su cliente que deshiciera la compraventa para evitar cualquier situación entre hermanos.

El 30 de agosto de 2002 se le refirió copia del expediente de las quejas al Procurador General para la investigación e informe correspondiente. Así las cosas, el 27 de enero de 2003, el Procurador General presentó el referido informe. Luego de evaluar las contestaciones que hiciera el licenciado Hernández a las quejas presentadas en su contra, el Procurador General concluyó que las actuaciones del referido abogado eran inadecuadas y violaban los Cánones de Ética Profesional. Indicó que, de acuerdo a las contestaciones del licenciado Hernández, éste parecía ser, más que abogado de una de las partes en un pleito contencioso, un notario público que no observó diligencia, ni fue precavido al examinar las circunstancias que rodeaban el negocio jurídico por él autorizado.

Por tratarse de la misma transacción notarial, el 16 de mayo de 2003, consolidamos las quejas presentadas contra el licenciado Hernández.

El Procurador General formuló querella contra el referido abogado el 23 de octubre de 2003. Le imputó los cargos siguientes:

**PRIMER CARGO**

El Lcdo. Rubén Hernández Rosario incurrió en conducta en violación del canon 28 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX C. 28, cuando se comunicó, negoció y

transigió con el Sr. Goes Rodríguez Ongay quien era parte adversa en el caso denominado: <u>Iris, Marilú, Luz Esther, Darío y Goes, todos de apellidos Rodríguez Ongay, demandantes v. Rafael, Gudelia[,] ambos de apellidos Rodríguez Ongay, y otros, demandados, Civil Número LAC 1997-0106, Sobre: <i>Familia Eriscundae y Daños y Perjuicios</i></u>, ante el Tribunal de Primera Instancia, Sala Superior de Utuado, en ausencia de su [abogado,] Lcdo. Jaime Oscar Rivera Sotomayor.

## SEGUNDO CARGO

El Lcdo. Rubén Hernández Rosario incurrió en conducta en violación al canon 18 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX C. 18, cuando autorizó como notario público la escritura número 12 de Compraventa de Participación Hereditaria y Precio Aplazado del 20 de febrero de 2002 [,] cuyos otorgantes eran el Sr. Goes Rodríguez Ongay como vendedor y el Sr. Rafael Rodríguez Ongay como comprador, siendo el primero parte adversa en el caso denominado: <u>Iris, Marilú, Luz Esther, Darío y Goes, todos de apellidos Rodríguez Ongay, demandantes v. Rafael, Gudelia[,] ambos de apellidos Rodríguez Ongay, y otros, demandados, Civil Número LAC 1997-0106, Sobre: <i>Familia Eriscundae y Daños y Perjuicios</i></u> ante el Tribunal de Primera Instancia, Sala Superior de Utuado, en ausencia y a espaldas del abogado del Sr. Goes Rodríguez Ongay, el Lcdo. Jaime Oscar Rivera Sotomayor.

## TERCER CARGO

El Lcdo. Rubén Hernández Rosario incurrió en conducta en violación a la Ley Notarial, Ley Núm. 75 de 2 de julio de 1987, 4 L.P.R.A. 2001 y siguientes, además del Reglamento Notarial de Puerto Rico de 1995, 4 L.P.R.A. Ap. XXIV, cuando autorizó como notario la escritura número 12 de Compraventa de Participación Hereditaria y Precio Aplazado del 20 de febrero de 2002, debido a que su conducta infringió el deber de

imparcialidad que se le impone a todo abogado en el ejercicio del notariado.

### CUARTO CARGO

El Lcdo. Rubén Hernández Rosario incurrió en conducta en violación al canon 20 al renunciar a la representación legal de su cliente en el caso legal civil número LAC1997-0106 sin antes cumplir con las exigencias éticas aplicables.

### QUINTO CARGO

El Lcdo. Rubén Hernández Rosario incurrió en conducta profesional en violación al canon 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX C. 35, cuando faltó a su deber de sinceridad.

El 23 de diciembre de 2003, el querellado presentó un escrito titulado "Contestación a Querella". Arguyó que su única intención al autorizar la escritura de compraventa entre los hermanos Rodríguez Ongay fue resolver un problema familiar. Indicó, además, que su actuación respondió, en parte, a que el abogado de los demandantes en el pleito sobre *"familia erciscundae* y daños y perjuicios", licenciado Rivera Sotomayor, le había informado que las partes en dicho caso estaban próximas a llegar a un acuerdo por estipulación. Esgrimió que, al momento de otorgar la escritura de compraventa de participación hereditaria, las partes habían llegado a un acuerdo para resolver el pleito pendiente ante el Tribunal de Primera Instancia. Indicó que el señor Goes Rodríguez Ongay le había informado su deseo de terminar el pleito trabado en contra de su hermano, señor Rafael Rodríguez Ongay, y que el mismo nunca debió haberse instado.

Asimismo, el querellado indicó que las querellas fueron presentadas por personas que no fueron parte de la escritura de compraventa autorizada por él. De igual manera, señaló que el expediente del caso fue devuelto al señor Rafael Rodríguez Ongay para que contratara otra representación legal, habiéndole tomado recibo del mismo el 4 de abril de 2002. Indicó, además, que el Tribunal de Primera Instancia, ante el cual se ventilaba el pleito entre los miembros de la sucesión Rodríguez Ongay, había advenido en conocimiento de la referida devolución ese mismo día, esto es, el 4 de abril de 2002. Indicó que, desde el 17 de mayo de 2002, el foro en cuestión había aceptado como abogado de récord de los demandados al licenciado Domingo Donate Pérez. Puntualizó que desde el 23 de mayo de 2002 había cesado de representar a los demandados de autos. Esto en respuesta a los últimos dos cargos presentados por el Procurador General. **Del expediente surge que el querellado presentó su renuncia a la representación legal de los demandados el 7 de julio de 2003.** Finalmente, intimó que su actuación constituyó un error de buena fe que no le significó ningún lucro personal.

El 28 de abril de 2004, designamos Comisionada Especial a la Honorable Ygrí Rivera de Martínez, ex Jueza del anterior Tribunal de Circuito de Apelaciones, para recibir y evaluar la prueba a ser presentada por las partes. La referida Comisionada Especial señaló vista sobre el estado de los procedimientos para el 5 de agosto de 2004. Luego de una posposición a petición del querellado, la misma se efectuó el 30 de septiembre de 2005. En la referida vista, entre otras

cosas, se analizó la querella y la prueba presentada por el Procurador General. Por su parte, el querellado expuso que era la primera vez que se enfrentaba a un proceso disciplinario en los cuarenta y tres (43) años que llevaba activo en la profesión legal. Indicó que no se benefició con la transacción notarial que dio origen al proceso y que sólo recibió trescientos ($300) dólares en pago de honorarios. Asimismo, indicó que aun no se había podido anular la referida transacción ya que el caso entre los miembros de la sucesión Rodríguez Ongay no había finalizado. Luego de varios incidentes procesales, se señaló vista para el 21 y 22 de junio de 2005. Luego de escuchar el testimonio del licenciado Rivera Sotomayor, quien compareció como testigo del Procurador General, se pautó la continuación del procedimiento disciplinario para el 22 de septiembre de 2005. En esta fecha el querellado testificó, señalando como defensa lo mismo que había expresado anteriormente en sus contestaciones a las quejas y a la querella. Indicó que, para la fecha en que se otorgó la escritura de compraventa, se encontraba convaleciendo por razón de ciertas operaciones a las que fue sometido durante los meses de agosto a diciembre de 2001.[1] Después de concederle un plazo a las partes para presentar ciertos documentos y memorandos de derecho, con el beneficio de toda la prueba presentada por las partes y los expedientes que se hicieron formar parte del

---

[1] Del expediente surge que los procedimientos ante la Comisionada Especial fueron pospuestos, en varias instancias, por motivos de que el querellado se encontraba indispuesto de salud.

proceso, la Comisionada Especial rindió su informe el 9 de junio de 2006.

Luego de un extenso y minucioso estudio, la Comisionada Especial concluyó que los cargos imputados en la querella, presentada por el Procurador General, fueron debidamente probados. Veamos.

La Comisionada Especial concluyó que el querellado violó el Canon 28 de Ética Profesional, *supra*, **toda vez que se reunió con una parte adversa, el demandante Goes Rodríguez Ongay, representado por el licenciado Rivera Sotomayor en ausencia de éste**, con el propósito de autorizar una escritura de compraventa de participación hereditaria. Determinó que la referida transacción notarial tenía como objeto un bien litigioso en el caso sobre "*familia erciscundae* y daños y perjuicios", en donde el querellado representaba a la parte demandada.

Asimismo, concluyó la Comisionada Especial que el querellado violentó el Canon 18 de Ética Profesional, *supra*, **al autorizar una escritura de compraventa de participación hereditaria, en la que el precio convenido entre los otorgantes aparentaba ser mucho menor al valor real de la misma. En consecuencia, puntualizó que el querellado actuó en detrimento de una de las partes otorgantes del referido negocio jurídico.**

La Comisionada reseñó, además, que el querellado infringió la Ley Notarial de Puerto Rico, *supra*, así como la Regla 5 de su Reglamento, *supra*, al autorizar la escritura de compraventa de participación hereditaria de 20 de febrero de

2002. Concluyó que con dicha actuación el querellado faltó a su deber ético de neutralidad e imparcialidad. Determinó que **el querellado estaba impedido de actuar como notario en una transacción que tenía como objeto un bien litigioso en la demanda trabada ante el foro primario, en la cual el querellado representaba a una de las partes.** Con tal actuación, intimó la Comisionada Especial, el querellado infringió la Regla 5 del Reglamento Notarial, *supra*, que preceptúa que **el notario está impedido de representar como abogado a un cliente en un litigio y, a la vez, servir de notario en algún aspecto relacionado al caso.**

De igual manera, el informe de la Comisionada Especial determinó que el querellado quebrantó el Canon 20 de Ética Profesional, *supra*, toda vez que, **aunque alegó haber renunciado a la representación legal de la parte demandada desde el 23 de mayo de 2002, su renuncia no fue presentada ante el Tribunal de Primera Instancia hasta el 7 de julio de 2003.**

Concluyó, además, que el querellado infringió el Canon 35 de Ética Profesional, *supra*, toda vez que con sus actuaciones demostró poca sinceridad para con el abogado de la parte contraria, licenciado Rivera Sotomayor, así como para con el Tribunal de Primera Instancia que atendía el pleito sobre "*familia escirscundae* y daños y perjuicios", en el cual el querellado era el representante legal de una de las partes. Según se desprende del informe, el querellado **autorizó la escritura de compraventa de participación hereditaria sin comunicárselo al abogado de la parte**

**contraria o al foro primario.** Finalmente, surge del referido informe que el querellado mintió sobre el alegado acuerdo entre las partes adversas para dividir los bienes hereditarios.

La Comisionada Especial expresó que la prueba presentada demostró que la incapacidad del señor Goes Rodríguez Ongay era de índole administrativa, por lo que estaba capacitado para entender el otorgamiento de la escritura de compraventa ante el querellado. Indicó, además, como posibles atenuantes, **que el querellado había sido admitido a la práctica de la profesión hace cuarenta y seis (46) años y nunca antes había enfrentado un proceso disciplinario y que éste aceptó su error, a la vez que mostró arrepentimiento.**

Con el beneficio de la discusión que antecede, nos compete resolver la acción disciplinaria de marras. Veamos.

### III

En atención al primer cargo formulado por el Procurador General, el Canon 28 del Código de Ética Profesional, *supra*, preceptúa, en lo que aquí nos concierne, que un abogado no debe, **en forma alguna, comunicarse, negociar ni transigir con una parte representada por otro abogado en ausencia de éste.** El fin del referido Canon es impedir que los abogados de una de las partes hagan acercamientos inapropiados a **personas que ostentan representación legal para obtener ventaja.**[2] De esta forma se protege, tanto el derecho de los clientes a obtener representación legal adecuada, como el privilegio que

---

[2] *In re: Martínez Llórens*, 158 D.P.R. 642 (2003).

cobija la relación entre el abogado y su cliente.[3]   La prohibición que se plasma en este Canon aplica irrespectivamente  del nivel de educación de las partes y **los motivos del abogado que intenta el contacto con la parte.**[4] La jerarquía profesional de los abogados, en contraste con la ausencia de preparación del adversario lego, **coloca al abogado en una posición de ventaja, permitiéndole inducir a error al adversario falto de su representación legal.**  Aún en casos de igualdad de circunstancias entre abogados y parte adversa es conducta impropia el comunicarse con dicha parte **en ausencia de su representación legal.**[5]

Por mandato del Canon 28 del Código de Ética Profesional, *supra*, el querellado estaba impedido de reunirse con el señor Goes Rodríguez Ongay, **en ausencia de su abogado,** licenciado Rivera Sotomayor, para autorizar la escritura de compraventa número 12 de 20 de febrero de 2002 con la que, alegadamente, estaba ayudando a resolver un problema familiar.  Dicho encuentro se llevó a cabo mientras se ventilaba una demanda en la cual el querellado representaba a una parte adversa a los intereses del otorgante, señor Goes Rodríguez Ongay.  Al así actuar, el querellado incurrió en conducta antiética, violatoria del Canon 28, *supra*.

---

[3] *Íd*; *In re:* Andréu, Rivera, 149 D.P.R. 820 (1999).

[4] *In re:* Martínez Llórens, *supra*; *In re:* Soto Cardona, 143 D.P.R. 50 (1997).

[5] *In re:* Andréu, Rivera, *supra*, citando la obra de la Profesora Sarah Torres Peralta, *El Derecho Notarial Puertorriqueño*.

Por su parte, el Canon 18 del Código de Ética Profesional, *supra*, impone a los abogados la obligación de defender con diligencia los intereses de su cliente. No obstante, para ello no puede recurrir a la violación de las leyes o a cometer engaños para sostener su causa.[6] Hemos indicado que, independientemente de las razones y motivaciones que pueda tener un abogado para llevar o no un caso, una vez asume la representación legal, tiene ante el cliente y ante los tribunales, la responsabilidad insustituible de llevar a cabo una gestión profesional con el más alto grado de diligencia y competencia posible.[7] Recientemente reiteramos que las exigencias preceptuadas en el Canon 18 de Ética Profesional, *supra*, se extienden a las funciones como notario.[8] Conforme a esta normativa el notario debe, con relación a los documentos que se otorgan ante él, ser diligente y desplegar en cada caso su más profundo saber y habilidad.[9] Por tal motivo, hemos determinado que el notario no puede limitar su intervención rutinaria a leer o dar a leer documentos a los otorgantes y asegurarse de la identidad de sus personas y firmas, en un ritual aséptico pero vacío de la inteligencia y comprensión

---

[6] *In re:* Vélez Barlucea, 152 D.P.R. 298 (2000).

[7] *Íd; In re:* Acevedo Álvarez, 143 D.P.R. 293 (1997); *In re:* Págan Hernández, 141 D.P.R. 113 (1996)

[8] *In re:* Fernández de Ruiz, 2006 T.S.P.R. 73, 2006 J.T.S. 82, 167 D.P.R._____ (2006); *In re:* González Vélez, 156 D.P.R. 580 (2002).

[9] *In re:* Fernández de Ruiz, *supra*, citando a *In re:* Albizu Merced, 136 D.P.R. 126 (1994).

de los firmantes. **Por el contrario, el notario está obligado, como parte de su deber de información, darle a los otorgantes las informaciones, aclaraciones y advertencias necesarias para que éstos comprendan el sentido del negocio, así como sus efectos y consecuencias, y se den cuenta del riesgo que corren en celebrarlo.**[10]

En armonía con lo anterior, concluimos que el querellado infringió el Canon 18 del Código de Ética Profesional, *supra*, al autorizar una escritura de compraventa de participación hereditaria, **mediante la cual el único beneficiado resultó ser su cliente en el caso que se ventilaba ante el Tribunal de Primera Instancia.** Surge del expediente que la finalidad del referido negocio jurídico era liquidar la participación del señor Goes Rodríguez Ongay en la finca sita en Jayuya, **a favor del cliente del querellado.** Surge del expediente, además, que el precio convenido por las partes en dicho negocio era menor al valor real de la participación hereditaria del vendedor en la referida finca. Se desprende del expediente, además, que dicha transacción se efectuó a espaldas del licenciado Rivera Sotomayor, abogado del señor Goes Rodríguez Ongay, precisamente porque **el precio pactado entre las partes otorgantes perjudicaba a este último.** No podemos avalar tal proceder.

En relación a la observancia, por parte de los notarios, de la Ley Notarial de Puerto Rico, *supra*, así como de su Reglamento, *supra*, hemos indicado que una vez el notario se

---

[10] *In re*: Fernández de Ruiz, *supra*, citando a <u>Chévere v. Cátala</u>, 115 D.P.R. 432 (1984).

aparta de cumplir con las obligaciones y deberes que le impone la ley y el ordenamiento ético, incurre en conducta que acarrea una sanción disciplinaria, ya que lesiona la confianza y la función pública en él depositada.[11] Hemos resuelto que otorgar un documento notarial en contravención a nuestra Ley Notarial constituye una violación a los Cánones 35 y 38 del Código de Ética Profesional.[12] De igual manera, hemos resuelto que el notario público viene llamado a proteger los derechos de las partes que comparecen ante su presencia a otorgar documentos, por lo que debe ejercitar **la neutralidad, la misma que es incompatible con la misión del abogado de inclinar la balanza a favor de su cliente**.[13]

Hemos concluido, además, que **un abogado está impedido de autorizar como notario documentos de su cliente que están relacionados con un pleito en el cual éste lo representa y que está pendiente ante los tribunales**.[14]

Del expediente surge que el querellado **autorizó la escritura de compraventa número 12 de 20 de febrero de 2002, mientras representaba los intereses de uno de los otorgantes en un pleito contencioso ante el Tribunal de Primera Instancia**. Asimismo, conviene apuntar que la referida transacción tenía como finalidad disponer de la participación

---

[11] *In re*: Charbonier Laureano, 156 D.P.R. 575 (2002); *In re*: Capestany Rodríguez, 148 D.P.R. 728 (1999).

[12] *In re*: Charbonier Laureano, *supra*, citando a *In re*: Vera Vélez, 148 D.P.R. 1 (1999).

[13] Bermúdez & Longo, Inc. v. P.R. Cast Steel Corp., 114 D.P.R. 808 (1983)

[14] *In re*: Colón Mamery, 138 D.P.R. 793, 797 (1995).

hereditaria de una de las partes cuando eso mismo era lo que se estaba ventilando ante el foro primario. Al así obrar, el querellado infringió la Regla 5 del Reglamento Notarial, *supra*, que **<u>preceptúa que el notario está impedido de representar como abogado a un cliente en una litigación contenciosa y, a la vez, servir de notario en asuntos relacionados con el mismo caso</u>**.

Los cargos cuarto y quinto (Cánones 20 y 35), los examinaremos conjuntamente.

El Canon 20 del Código de Ética Profesional, *supra*, establece el procedimiento que debe seguir todo abogado que, habiendo representado a un litigante ante el foro judicial, desea dar por terminada dicha representación. El referido Canon dispone que todo abogado que desea renunciar necesita obtener el permiso del tribunal para poder dar por terminada dicha relación. **Hasta tanto el abogado no sea formalmente relevado de sus funciones, aceptando el tribunal su renuncia, éste tiene el deber de continuar llevando a cabo su gestión profesional de forma competente y diligente.**[15]

Por otro lado, el Canon 35 del Código de Ética Profesional, *supra*, impone a los abogados **un deber de sinceridad y honradez ante los tribunales, frente a sus representados y al relacionarse con sus compañeros de profesión.**[16] Hemos resuelto que no es sincero ni honrado el

---

[15] *In re*: Franco Rivera, 2006 T.S.P.R. 170, 169 D.P.R.\_\_\_\_ (2006) citando a Lluch et al. v. España Service Station, 117 D.P.R. 729 (1986).

[16] *In re*: Fernández de Ruiz, *supra*, citando a *In re*: Martínez, Lawrence Odell, 148 D.P.R. 49 (1999).

utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios **o una falsa relación de los hechos o del derecho.**[17] Hemos determinado que las obligaciones consagradas en el referido Canon constituyen normas mínimas de conducta que sólo pretenden preservar el honor y la dignidad de la profesión.[18] Por tal motivo, el abogado no sólo debe observarlas durante un pleito, sino en toda faceta en la cual se desenvuelva. El compromiso de un abogado con la verdad debe ser siempre incondicional, toda vez que la verdad es atributo inseparable de ser abogado. En consecuencia, se infringe el Canon 35, *supra*, **con el simple hecho objetivo de faltar a la verdad independientemente de los motivos para la falsedad.**[19]

En su contestación a la querella formulada por el Procurador General, el querellado, indicó, entre otras cosas, que para el **23 de mayo de 2002 había dejado de representar al señor Rafael Rodríguez Ongay** en el pleito sobre "*familia erciscundae* y daños y perjuicios" que se ventilaba ante el foro primario. No obstante, surge del expediente que su renuncia a dicha representación fue solicitada al Tribunal de Primera Instancia por vez primera **el 7 de julio de 2003**. Resulta forzoso concluir que el querellado infringió lo preceptuado en el Canon 35 del Código de Ética Profesional,

---

[17] *In re*: Fernández de Ruiz, *supra*, citando a *In re*: Silvaglioni Collazo, 154 D.P.R. 533 (2001) e *In re*: Aguila López, 152 D.P.R. 52 (2000).

[18] *In re*: Ortiz Martínez, 2004 T.S.P.R. 66, 2004 J.T.S. 69, 161 D.P.R.____ (2004).

[19] *In re*: Fernández de Ruiz, *supra*.

*supra*. De igual manera, el querellado infringió el Canon 20 del Código de Ética Profesional, *supra*, al otorgar la escritura de compraventa de 20 de febrero de 2002 **sin antes haber renunciado a la representación legal de una de las partes otorgantes.** No cabe duda que sus funciones como notario público y abogado de récord de una de las partes otorgantes, en un pleito contencioso contemporáneo al otorgamiento, son incompatibles ya que se crea un conflicto de interés que trastoca la presunción de imparcialidad que protege toda labor del notario y empaña la fe pública notarial.[20]

Hemos expresado que este Tribunal no habrá de alterar las determinaciones de hechos del Comisionado Especial, salvo en casos donde surja que medió parcialidad, prejuicio o error manifiesto.[21] En este caso, tras un examen minucioso del informe preparado por la Comisionada Especial, así como la prueba que obra en el expediente, no hallamos razón por la que debamos intervenir con sus conclusiones.

Finalmente, hemos establecido que al determinar la sanción disciplinaria aplicable al abogado querellado, podemos tomar en cuenta factores tales como (a) la reputación del abogado en su comunidad, (b) el previo historial de éste, (c) si es su primera falta, (d) la aceptación de la falta y su sincero arrepentimiento, (e) si se trata de una conducta aislada, (f) el ánimo de lucro que medió su actuación,

---

[20] *In Re*: Colón Ramery, *supra*.

[21] *Íd* citando a *In re*: Moreira Avillán, 147 D.P.R. 78, 86 (1991).

resarcimiento al cliente y cualesquiera otras consideraciones ya bien atenuantes o agravantes que medien de acuerdo a los hechos.[22]

En el presente caso, tomamos en consideración a favor del licenciado Hernández los siguientes atenuantes: (a) el abogado querellado lleva más de cuatro décadas en la práctica de la profesión de abogado y más de veinte (20) años fungiendo como notario, (b) esta es la primera falta dentro de su descargo profesional en la abogacía o en la notaría, (c) los hechos no demuestran que el querellado tuviera ánimo de lucro personal, (d) el querellado demostró genuino arrepentimiento.

En virtud de lo anterior, consideramos procedente limitar la acción disciplinaria a una suspensión por el término de tres (3) meses del ejercicio de la abogacía en nuestra jurisdicción; apercibiéndole al querellado de cumplir a cabalidad, en el futuro, con los Cánones de Ética que rigen la profesión de abogado y la Ley Notarial de Puerto Rico y su Reglamento.

Se dictará Sentencia de conformidad.

---

[22] *In re*: Vélez Barlucea, *supra*.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


In re:



                                    CP-2003-17

Rubén Hernández Rosario





                          SENTENCIA



          San Juan, Puerto Rico, a 23 de enero
          de 2007.

          Por los fundamentos expuestos en la
Opinión Per Curiam que antecede, la cual se hace
formar parte íntegra de la presente, suspendemos
al licenciado Rubén Hernández Rosario por el
término de tres (3) meses del ejercicio de la
abogacía en nuestra jurisdicción; apercibiéndole
al querellado de cumplir a cabalidad, en el
futuro, con los Cánones de Ética que rigen la
profesión de abogado y la Ley Notarial de Puerto
Rico y su Reglamento.

          Se le impone el deber de notificar a
todos sus clientes de su inhabilidad de seguir
representándolos, devolverles cualesquiera
honorarios recibidos por trabajos no realizados e
informar oportunamente de su suspensión a los
foros judiciales y administrativos. Deberá,
además, certificarnos dentro del término de
treinta (30) días a partir de la notificación de
esta Opinión Per Curiam y Sentencia, del
cumplimiento de estos deberes.

Notifíquese personalmente al querellado con copia de la Opinión Per Curiam que antecede y de esta Sentencia.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo.


                    Aida Ileana Oquendo Graulau
                    Secretaria del Tribunal Supremo