*In re* ELBA SANTIAGO RODRÍGUEZ, querellada.

*Número:* TS-6804          *Resuelto:* 20 de agosto de 2003

*Carmen H. Carlos,* directora de la Oficina de Inspección de Notarías; *Israel Pacheco Acevedo,* secretario ejecutivo del Fondo de Fianza Notarial del Colegio de Abogados de Puerto Rico; *Lynnette Rivera Rodríguez, Nilsa L. García Cabrera* e *Ivonne Díaz Pérez,* asesoras legales de la Oficina de Administración de los Tribunales, parte querellante; *Elba I. Santiago Rodríguez,* abogada querellada; *Enrique Ayoroa Santaliz* y *Federico Díaz Ortiz,* abogados de la parte querellada; *Aida N. Molinary de la Cruz,* presidenta y directora ejecutiva de la Comisión de Disciplina y de Separación del Servicio por Razón de Salud de Jueces y Juezas del Tribunal de Primera Instancia y del Tribunal de Circuito de Apelaciones; *José E. Motta García,* comisionado de la Comisión de Disciplina y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal de Circuito de Apelaciones; *Mercedes M. Buermeister,* directora administrativa de la Oficina de Administración de los Tribunales.

PER CURIAM: La Lcda. Elba I. Santiago Rodríguez juramentó como Jueza Municipal del Tribunal de Primera Instancia el 11 de enero de 2000 y fue asignada como Jueza Instructora a la Sala de Investigaciones del Centro Judicial de Ponce. A su vez, la licenciada Santiago Rodríguez desempeñó su cargo en varios distritos judiciales hasta el 15 de enero de 2002, cuando fue efectiva su renuncia a la Judicatura por razones de salud.

El 29 de agosto de 2000, el entonces Secretario de Justicia, Hon. Ángel Rotger Sabat, solicitó a la Directora Administrativa de los Tribunales, Lcda. Mercedes I. Marrero de Bauermeister, una investigación sobre la posible con-

ducta impropia de la entonces jueza Santiago Rodríguez, fundamentada en discrimen por razón de género contra las mujeres que son víctimas de violencia doméstica y por negarse a la celebración de vistas de causa probable para el arresto en ausencia de los imputados.[1] La licenciada Marrero de Bauermeister solicitó a la Oficina de Asuntos Legales de la Oficina de Administración de los Tribunales (en adelante O.A.T.) que iniciara una investigación sobre posibles violaciones a los cánones del Código de Ética Judicial, 4 L.P.R.A. Ap. IV–A. Finalizada la investigación, la O.A.T. rindió el correspondiente informe a la Comisión de Disciplina y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal de Circuito de Apelaciones de Puerto Rico (Comisión). El 21 de marzo de 2001 el comisionado José E. Motta García determinó causa probable para comenzar el procedimiento disciplinario.

La querella fue presentada el 18 de junio de 2001 y en ésta se le imputaron a la entonces jueza Santiago Rodríguez setenta y un cargos por haber violado el Art. II, Sec. 1 de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1; los Cánones I, II, V, XI, XIV, XVI, XVII y XXVI de Ética Judicial, 4 L.P.R.A. Ap. IV–A; el Art. 5.004(b)(3) de la Ley de la Judicatura de Puerto Rico de 1994 (4 L.P.R.A. sec. 22p); la Regla 2 de Administración del Tribunal de Primera Instancia del Estado Libre Asociado de Puerto Rico, 4 L.P.R.A. Ap. II–B, y la Resolución de este Tribunal de 12 de noviembre de 1999 en *In re Enmdas. Cánones Ética Judicial*, 149 D.P.R. 733 (1999).

En su comparecencia ante la Comisión, la querellada

---

[1] Los incidentes que dieron lugar a la queja ocurrieron en los casos siguientes: *Pueblo v. Carlos Juan Velázquez Figueroa; Pueblo v. Humberto Vázquez Cruz; Pueblo v. Ming Yui Mok; Pueblo v. Luis R. Venegas Girón; Pueblo v. Jesús Torres González; Pueblo v. Joel Maldonado Rodríguez; Pueblo v. José J. Velázquez Matos; Pueblo v. Pedro García Torres; Pueblo v. Alberto Miranda; Pueblo v. Omar Alí Abdel Asís; Pueblo v. José Olán Santiago; Pueblo v. Rubén Rivera Torres*. Este último caso fue el único que no estaba relacionado con violencia doméstica. Los mencionados casos se ventilaron en el Centro Judicial de Ponce.

negó los hechos imputados y adujo que se había violado su derecho a un debido proceso de ley, ya que el comisionado José E. Motta García era quien había determinado causa probable en su contra y que éste, a su vez, es padre del Lcdo. José E. Motta Malavé, Fiscal Auxiliar de Ponce, donde se promovió la querella.

Luego de celebrar una vista evidenciaria, la Comisión nos remitió su informe el 27 de agosto de 2002. Ésta encontró probadas las violaciones imputadas a los Cánones de Ética Judicial. De acuerdo con las determinaciones de hecho formuladas por la Comisión, la conducta impropia de la entonces jueza Santiago Rodríguez consistió en negarse a celebrar unas vistas de causa probable para arresto, luego de manifestar en sala que ella no las celebraba en ausencia de los imputados. La negativa de la querellada ocurrió a pesar de contar con la presencia de testigos con conocimiento personal de las alegaciones y con declaraciones sobre los hechos delictivos. Además, la Comisión determinó que la querellada incurrió en un patrón de conducta constitutivo de discrimen por género contra las víctimas de violencia doméstica.

En síntesis, la entonces jueza Santiago Rodríguez manifestó que no podía atender a una de las víctimas por tener en brazos a su pequeña hija; que las mujeres estaban tomando la solicitud de órdenes de protección a "relajo"; culpó a una de las denunciantes de causar los incidentes de violencia doméstica por dedicarse a estudiar y por encontrarse enferma; manifestó que la vista de determinación de causa probable contra uno de los agresores era una pérdida de tiempo; alegó que "no iba a determinar causa probable por un simple jalón de pelo"; llamó mentirosa a una de las víctimas y la acusó de haber inventado el incidente de violencia doméstica por estar celosa, y expuso en sala que las mujeres solicitan una orden de protección cuando quieren dejar al esposo, porque tienen otro hombre o para sacar a los esposos de sus casas los fines de semana.

La Comisión recomendó como medida disciplinaria la destitución de la querellada como Jueza Municipal. En vista de lo anterior, el Juez Presidente de este Tribunal, Hon. José A. Andréu García, relevó a la entonces jueza Santiago Rodríguez de sus funciones mediante la Orden Administrativa de 11 de septiembre de 2002. La querellada renunció a su cargo de Jueza Municipal mediante una carta de 9 de diciembre de 2002, efectiva el 15 de enero de 2003.

El 24 de enero de 2003 recibimos un informe sobre el estado de la obra notarial de la licenciada Santiago Rodríguez, de cuando fungía como notaria antes de ocupar el cargo de Jueza Municipal. El 4 de abril de 2000, aproximadamente tres meses después de haber juramentado como Jueza Municipal, la licenciada Santiago Rodríguez envió a la Oficina de Inspección de Notarías (en adelante O.D.I.N.) *parte* de su obra notarial, consistente de los Protocolos de 1979 a 1996 y un tomo del Registro de Testimonios. Los Protocolos de 1997 a 1999, que no habían sido inspeccionados, los entregó posteriormente junto con dos tomos del Libro Registro de Testimonios. La O.D.I.N. indicó que al inspeccionar los Protocolos de 1997 a 1999 se habían encontrado deficiencias, tales como: escrituras donde no se expresó la cuantía; ausencia de notas de contrarreferencia en escrituras rectificadas o enmendadas mediante actas; faltaba la comparecencia de la cónyuge del vendedor en una escritura; escritura de partición de inmuebles en común pro indiviso en contravención a la ley; deficiencias en Sellos de Rentas Internas por la suma de $274, más $12 de impuesto notarial.

Además, se indicó que la notaria

> [m]ientras se desempeñaba como Juez[a] Municipal desatendió los requerimientos de [la O.D.I.N.] para que corrigiera las faltas señaladas a través de las distintas inspecciones, *hecho éste que impidió la presentación oportuna del correspondiente informe de cesación, en vista de su designación y desempeño como Juez[a] Municipal.* (Énfasis suplido.)

En su réplica al informe, la licenciada Santiago Rodríguez sostuvo que no había recibido las notificaciones de la O.D.I.N., porque mientras se desempeñaba como Jueza había sido trasladada a la Sala de Caguas, por lo que se había mudado a dicho municipio. Adujo, además, que procedió a autorizar la escritura de división de bienes en común pro indiviso porque se trataba de bienes hereditarios y que había corregido las faltas señaladas.

Mediante nuestra Resolución de 7 de marzo de 2003, le concedimos un término a la O.D.I.N. para que se expresara sobre la réplica. El 25 de marzo de 2003 la O.D.I.N. compareció y adujo que el desconocimiento de la querellada de los requerimientos de ésta se debió a que incumplió su obligación de notificar cualquier cambio de dirección a la Secretaría de este Tribunal y a la O.D.I.N. Por otro lado, señaló que la querellada tenía su fianza notarial al descubierto, tampoco había finalizado el proceso de renuncia al ejercicio de la notaría cuando fue nombrada a la Judicatura y que este Tribunal tampoco había ordenado la cancelación de la fianza. Finalmente, señaló que aunque la querellada había corregido las faltas previamente señaladas, se habían encontrado nuevas deficiencias en su obra notarial, a saber: que no dio fe del conocimiento de los testigos instrumentales que, a su vez, comparecieron como testigos de conocimiento en una escritura de testamento abierto; faltaban Sellos de Rentas Internas; no se expresaron los nombres de los cónyuges de comparecientes casados en algunas escrituras; en una escritura de emancipación no se expresó la ocupación de la emancipada; en otra escritura de testamento abierto no expresó que al menos dos de los testigos instrumentales conocían al testador; escribió la fecha en guarismos, y en algunos instrumentos faltaba la firma y el sello notarial.

El 10 de abril de 2003 la querellada solicitó su readmisión al ejercicio de la notaría por haber cesado en sus funciones judiciales. Al día siguiente emitimos una resolución

en la cual ordenamos a la licenciada Santiago Rodríguez corregir las deficiencias señaladas y pagar la fianza notarial. El 11 de abril ésta prestó la fianza. Por su parte, la O.D.I.N. compareció nuevamente ante nos, el 22 de mayo de 2003, para informar que la querellada había corregido las deficiencias indicadas y que los Protocolos correspondientes a 1998 y 1999 habían sido aprobados. Señaló que el único Protocolo pendiente de aprobación era el correspondiente a 1997, ya que en la Escritura Núm. 1 de testamento abierto los testigos instrumentales comparecieron, a su vez, como testigos de conocimiento. Sin embargo, la notaria no dio fe de conocer personalmente a estos testigos, sino que los identificó mediante unos documentos. Además, en el segundo folio de dicha escritura hay una tachadura, no salvada por los comparecientes, donde se escribió la frase "doy fe que los testigos conocen la testadora y de mi conocimiento personal de los comparecientes en la forma de ley".

La O.D.I.N. señaló que la licenciada Santiago Rodríguez había intentado comunicarse con la familia de la testadora, la Sra. María Acosta Sáez, mediante comunicación dirigida al Sr. Marcial Acosta Sáez, heredero instituido en dicho testamento. En moción de 12 de junio de 2003, la querellada nos informó que el señor Acosta Sáez, único heredero de la testadora, se comunicó con ella y le indicó que al presente el testamento no había sido objeto de impugnación. Además, le solicitó que en caso de que el Registro de la Propiedad denegara la inscripción de éste, se comprometiera a sufragar los gastos para instar un procedimiento de declaratoria de herederos. En una carta fechada de 10 de junio de 2003 la querellada se comprometió a hacerse cargo de cualquier procedimiento legal, de presentarse algún problema con la validez del testamento.

Con el anterior trasfondo fáctico, y examinada la normativa aplicable a la querella de marras, procedemos a resolver.

## II

■ De entrada es menester señalar que no alberga-mos duda de que los hechos determinados por la Comisión reflejan que la conducta de la querellada, mientras se des-empeñó como Jueza Municipal, constituyó una violación a los Cánones I, II, V, XI, XXIV, XVI, XVII y XXVII de Ética Judicial, *supra*. No obstante, ésta presentó la renuncia a su cargo el 15 de enero de 2003. A la luz de lo anterior, no procederemos a disciplinarla conforme a las citadas nor-mas, sino a tenor de los cánones del Código de Ética Pro-fesional, 4 L.P.R.A. Ap. IX. Reiteramos que la renuncia de un miembro de la Judicatura o el vencimiento de su tér-mino no impide la continuación de un procedimiento disci-plinario en su contra, siempre que la alegada conducta im-propia pueda dar lugar a su desaforo o suspensión del ejercicio de la abogacía. Regla 37 para Acciones Disciplina-rias y de Separación del Servicio por Razón de Salud de Jueces o Juezas del Tribunal de Primera Instancia y del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XV–A; *In re Suárez Marchán*, 159 D.P.R. 724 (2003); *In re Lugo Rodríguez*, 149 D.P.R. 551 (1999).

Antes de evaluar la conducta de la querellada como abo-gada, examinaremos su argumento ante la Comisión a los efectos que se violó su derecho a un debido proceso de ley, debido a que el comisionado José E. Motta García fue quien determinó causa probable para iniciar el procedi-miento disciplinario y éste, a su vez, es padre del fiscal José Motta Malavé, adscrito al distrito de Ponce, donde se promovió la querella. Resulta inmeritorio el planteamiento de la entonces jueza Santiago Rodríguez, ya que las decla-raciones juradas que sirvieron como fundamento para ini-ciar la investigación en la O.A.T. fueron tomadas en su mayoría por el fiscal Luis Guillermo Zambrana Sánchez. Luego de haber examinado el expediente de la querella de marras, no encontramos intervenciones del fiscal Motta

Malavé indicativas de una intervención indebida con los procedimientos llevados a cabo ante la Comisión. El mero hecho de que éste trabaje en la fiscalía de Ponce no implica que la Comisión actuara con parcialidad por razón de su parentesco con el comisionado Motta García.

Atendido el anterior planteamiento, examinaremos si la conducta de la querellada infringió los cánones del Código de Ética Profesional.

### III

■ "La práctica de la abogacía, distinto quizás a otras profesiones, conlleva una seria y delicada función ciudadana pues la misma representa servicio, ética y ejemplo." *Ramos Acevedo v. Tribunal Superior*, 133 D.P.R. 599, 613 (1993). Lo anterior obedece a que los miembros de la profesión legal son quienes tienen principalmente la función de administrar la justicia. Reiteradamente hemos señalado que los abogados son funcionarios del Tribunal y ministros de la justicia. Íd., págs. 613–614. Como tales, sus actuaciones deben estar encaminadas a mantener un orden jurídico íntegro y eficaz, "orientado esencialmente por los principios de vida democrática y de *respeto a la inviolable dignidad del ser humano*". (Énfasis suplido.) Preámbulo a los Cánones del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

Cónsono con los anteriores principios, el Canon 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, dispone en lo pertinente:

> El abogado deberá esforzarse, al máximo de su capacidad, en la *exaltación del honor y dignidad de su profesión*, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia. *En su conducta como funcionario del tribunal, deberá interesarse en hacer su propia y cabal aportación hacia la consecución de una mejor administración de la justicia.*
>
> *Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, tanto en su vida pri-*

*vada como en el desempeño de su profesión, debe conducirse en
forma digna y honorable.* (Énfasis suplido.)

█ Las actuaciones de la licenciada Santiago Rodrí-
guez, mientras fungía como Jueza Municipal, fueron con-
trarias a los postulados del recién citado canon. Su nega-
tiva a celebrar las vistas de causa probable para el arresto
en ausencia de los imputados obstruyó la sana administra-
ción de la justicia y la marcha adecuada de los procedi-
mientos criminales que se llevan a cabo en los tribunales
de instancia del país. Este proceder hiere el honor de una
profesión que está llamada a ejercer la función social de
facilitar el acceso de los ciudadanos al sistema judicial me-
diante la prestación de servicios y orientación adecuados.
Los abogados, al ser el espejo donde se refleja la imagen de
la profesión, deben actuar con *el más escrupuloso sentido
de responsabilidad* que impone la función social que
ejercen. Véanse: *In re Silvagnoli Collazo,* 154 D.P.R. 533
(2001); *In re Ortiz Brunet,* 152 D.P.R. 542 (2000); *In re Coll
Pujols,* 102 D.P.R. 313, 319 (1974). Al rehusarse a celebrar
vistas de causa probable para el arresto en ausencia de los
imputados, la querellada de autos faltó a su deber de ac-
tuar responsablemente para lograr un sistema judicial efi-
ciente, que goce de la confianza de la ciudadanía. Preám-
bulo a los Cánones del Código de Ética Profesional, *supra.*

█ De otra parte, las expresiones discriminatorias de
la licenciada Santiago Rodríguez hacia las mujeres vícti-
mas de violencia doméstica se apartaron de la conducta
digna y honorable que exige el Canon 38 del Código de
Ética Profesional, *supra.* Con su proceder minimizó y tri-
vializó el serio problema de violencia doméstica que encara
el país. "La ética, a diferencia de lo que se cree, no tiene por
objeto al sujeto que actúa, sino, también y principalmente,
a quien se dirige la acción". J.C. Suárez Villegas, *Princi-
pios de Ética Profesional,* Madrid, Ed. Tecnos, 2001, pág.
44. Los imperativos éticos consagrados en los cánones del
Código de Ética Profesional requieren de quienes ejercen la

abogacía actuar conforme a los principios de respeto a la dignidad de los seres humanos que nutren nuestro ordenamiento jurídico. Preámbulo a los Cánones de Ética Judicial, *supra.*

> La dignidad de la persona es un bien que está presente en cualquier relación. Por esta razón, la justicia exigiría concretar el imperativo ético en la siguiente máxima: "tratar al otro como le gustaría a uno ser tratado cuando se halla en una posición de dependencia (necesidad) frente al otro". Suárez Villegas, *op. cit.*, pág. 46.

La conducta de la querellada de autos quebrantó la dignidad de la profesión legal. En virtud de su actuación en extremo displicente, censuramos enérgicamente a la licenciada Santiago Rodríguez por haber infringido el Canon 38 del Código de Ética Profesional, *supra,* mientras fungió como Jueza Municipal. Una vez determinado que el proceder de la licenciada Santiago Rodríguez, además de ser contrario a los Cánones de Ética Judicial, contravino los cánones del Código de Ética Profesional, nos queda evaluar su obra notarial.

## IV

En su comparecencia ante nos, la O.D.I.N. nos indica que a pesar de que la licenciada Santiago Rodríguez asumió un cargo incompatible con el ejercicio de la notaría, el de Jueza Municipal, nunca completó el proceso de renuncia, ya que se encontraron múltiples deficiencias en su obra notarial las cuales requerían corrección. La licenciada Santiago Rodríguez desatendió los requerimientos de la O.D.I.N. para que las corrigiera e, incluso, fue imposible localizarla, puesto que se había mudado a Caguas y no había informado sobre esta circunstancia ni a la O.D.I.N. ni a este Foro.

En primer lugar, debemos señalar que el hecho de que la querellada ocupara el cargo de Jueza Municipal no

la relevaba de su deber de notificar a la Secretaria de este Tribunal y a la O.D.I.N. su cambio de dirección, de acuerdo con el Art. 7 de la Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987, según enmendada, 4 L.P.R.A. sec. 2011, y la Regla 11 del Reglamento Notarial de Puerto Rico, 4 L.P.R.A. Ap. XXIV. La omisión de un abogado o notario de suplir a este Foro su dirección es causa para suspenderlo temporeramente del ejercicio de la abogacía sin necesidad de trámites ulteriores. *In re Santiago Méndez*, 141 D.P.R. 75, 76–77 (1996); *In re Morales Rubín*, 139 D.P.R. 44, 45 (1995).

De otra parte, aunque la licenciada Santiago Rodríguez estaba imposibilitada para ejercer la notaría, técnicamente aún era notaria, ya que no completó el procedimiento de renuncia a esta función; tampoco notificó ni al Colegio de Abogados ni a este Tribunal sobre su renuncia, ni se nos remitió el informe de cesación de la O.D.I.N.[2] Ante el incumplimiento de la licenciada Santiago Rodríguez con el procedimiento de cesación voluntaria de la notaría, este Tribunal no pudo dictar la resolución que, en los casos de renuncia voluntaria a la función notarial emitimos, para ordenar la cancelación de la fianza. Regla 9 del Reglamento Notarial de Puerto Rico, 4 L.P.R.A. Ap. XXIV.[3] In-

---

[2] A tales efectos, el Art. 64 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2104, dispone, en lo pertinente:

"En caso de fallecimiento o incapacidad mental o física de carácter permanente de un notario, o cuando cesare voluntaria o forzosamente en el desempeño de su ministerio, o en el caso de que la entidad aseguradora solicitare la terminación de la fianza, o cuando acepte un nombramiento de carácter permanente para cualquier cargo judicial o ejecutivo, el ejercicio del cual sea incompatible con el libre ejercicio de la profesión de abogado o de notario de acuerdo a las leyes de Puerto Rico, será deber del notario, de sus herederos, sucesores o causahabientes, entregar dentro de treinta (30) días sus protocolos y Registro de Testimonios, debidamente encuadernados, a la Oficina de Inspección de Notarías con el fin de que sean inspeccionados.

"Si no verificare dicha entrega voluntariamente, dentro del indicado término, el Tribunal Supremo de Puerto Rico podrá dictar las órdenes correspondientes a tal efecto."

[3] La citada regla establece que "[e]l Tribunal Supremo de Puerto Rico hará constar en la resolución de cancelación de fianza la fecha en que el Notario sometió su renuncia o la fecha en que asumió funciones incompatibles con el ejercicio del notariado". 4 L.P.R.A. Ap. XXIV, R. 9.

cluso el Colegio de Abogados compareció ante nos el 12 de mayo de 2000 para solicitar que se cancelara la fianza notarial de la licenciada Santiago Rodríguez por estar al descubierto, pues se había vencido en julio de 1999. En respuesta a esta solicitud, mediante Resolución de 2 de junio de 2000 concedimos un término a la notaria para que expresara la razón por la cual no debía ser suspendida del ejercicio de la notaría. Ante la incomparecencia de la licenciada Santiago Rodríguez, el 14 de julio de 2000 le concedimos un nuevo término para que se expresara. La notificación de la segunda resolución no pudo diligenciarse, debido a que la notaria no fue localizada en la dirección que constaba en su expediente. Así las cosas, el Colegio de Abogados compareció nuevamente ante nos el 31 de enero de 2002 para informarnos que la licenciada Santiago Rodríguez había satisfecho el pago de su fianza notarial.

No cabe duda que el nombramiento, la confirmación y la juramentación de la licenciada Santiago Rodríguez como Jueza Municipal le impedían ejercer la notaría. Esto, sin embargo, no la relevaba de su responsabilidad de completar el proceso de renuncia a esa función, con la debida corrección de las deficiencias señaladas, para que la O.D.I.N. rindiera el informe correspondiente de cesación y para que este Foro emitiera una resolución en la cual aceptara su renuncia y ordenara la cancelación de la fianza notarial. Nos preocupa el hecho de que notarios que han sido nombrados o que ocupan cargos incompatibles con el ejercicio de la notaría, asuman tales cargos sin completar el procedimiento de renuncia voluntaria, desvinculándose de su responsabilidad indelegable de corregir su obra notarial.[4]

---

[4] Resulta importante indicar que el 10 de junio de 2003 la Oficina de Inspección de Notarías (O.D.I.N.) emitió la Instrucción Núm. 16 sobre el Procedimiento de Inspección ante Solicitud de Cesación Voluntaria, aplicable a la renuncia voluntaria al ejercicio de la notaría por un nombramiento o ejercicio de un cargo incompatible con esta función o por fallecimiento o incapacidad. A tenor de dicha Instrucción, el notario debe notificar por escrito a la O.D.I.N. su decisión de cesar voluntariamente en el ejercicio de la notaría o la aceptación del nombramiento a un cargo incompatible con ésta. Además, en la notificación debe indicar la cantidad de tomos de su

A la luz de lo expuesto previamente, la licenciada Santiago Rodríguez incumplió con el procedimiento de cesación voluntaria al ejercicio de la notaría, por lo cual, aunque no podía ejercer dicha función por ocupar el cargo de Jueza Municipal, nunca dejó de ser notaria. La función judicial que ejercía la querellada no la eximía de cumplir con su responsabilidad de estar al tanto de la inspección de su obra notarial, corregir las deficiencias, completar el procedimiento de renuncia voluntaria y atender diligentemente los requerimientos de este Tribunal y de la O.D.I.N. Por esta razón, estamos en posición de ejercer nuestra función disciplinaria sobre la querellada en su carácter de notaria.

La O.D.I.N. compareció nuevamente ante nos el 22 de mayo de 2003 para informarnos que la licenciada Santiago Rodríguez había corregido las deficiencias señaladas, a excepción de que en la Escritura Núm. 1 sobre testamento abierto, del Protocolo correspondiente a 1997, omitió dar fe del conocimiento personal de los testigos de conocimiento, quienes, a su vez, comparecieron como testigos instrumentales. La notaria identificó a dichos testigos mediante documentos de identidad conforme a los medios supletorios dispuestos en el Art. 17 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2035. Además, en la escritura figura una tachadura, no salvada por los comparecientes, donde la notaria expresó: "doy fe que los testigos conocen la testadora y de mi conocimiento personal de los comparecientes en la forma de ley."

De acuerdo con el Art. 634 del Código Civil, 31 L.P.R.A.

---

Protocolo por año y del Registro de Testimonios, así como señalar si la obra notarial fue debidamente aprobada, en cuyo caso debe incluir la fecha de aprobación, o si ésta se encuentra pendiente de inspección.

El documento indica que *"[h]asta que la obra notarial sea aprobada y entregada, el notario tiene el deber de rendir el índice mensual correspondiente y efectuar el pago de la fianza notarial. La solicitud de cesación voluntaria o de cesación por nombramiento a cargo incompatible no releva al (la) notario del cumplimiento de sus deberes ministeriales"*. (Énfasis suplido y en el original.) De la cita anterior se puede colegir que, cuando un notario sea nombrado a un cargo incompatible con el ejercicio de la notaría, seguirá considerándose como tal hasta que finalice el procedimiento de cesación establecido por la O.D.I.N. y por este Tribunal.

sec. 2150, "[e]l notario y dos de los testigos que autoricen el testamento deberán conocer al testador, y si no lo conocieren, *se identificará su persona con dos testigos que le conozcan y sean conocidos del mismo notario* y de los testigos instrumentales". (Énfasis suplido.) Por su parte, el Art. 635 del Código Civil, 31 L.P.R.A. sec. 2151, dispone que cuando no sea posible identificar al testador en la manera prescrita en la disposición recién citada, el notario deberá señalar esta circunstancia, reseñando los documentos que el testador presente a los fines de identificarse y las señas personales de éste. Las anteriores disposiciones tienen el propósito de asegurar que el notario conozca al testador o se asegure de su conocimiento por algún medio eficaz.

En síntesis, la identificación del testador puede obtenerse por el conocimiento del notario y de los testigos instrumentales; la comparecencia de testigos de conocimiento que sean conocidos personalmente por el notario y, únicamente a falta de los medios anteriores, por la presentación de los documentos de identidad enumerados en el Art. 17 de la Ley Notarial de Puerto Rico, *supra*.([5]) El Art. 649 del Código Civil, 31 L.P.R.A. sec. 2186, impone al notario la obligación de dar fe, al final del testamento, de conocer al testador o a los testigos de conocimiento.

Para lograr la eficacia testamentaria es requisito indispensable que se observen las formalidades establecidas en el Código Civil para el otorgamiento; su incumplimiento acarrea la nulidad del instrumento público. Art. 636 del Código Civil, 31 L.P.R.A. sec. 2152. Las referidas formalidades no son simples requisitos de forma, sino aquellas esenciales para garantizar la autenticidad y veracidad de la voluntad del testador. *In re Maldonado Rivera*, 159 D.P.R. 73 (2003). En *Deliz et als. v. Igartúa et als.*, 158

---

([5]) El Art. 17 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2035, admite como documentos de identidad aquellos con firma y fotografía, expedidos para propósitos de identificación por las autoridades públicas del Estado Libre Asociado de Puerto Rico, de Estados Unidos o de uno de los estados de la Unión. Además, admite la identificación mediante pasaporte expedido por una autoridad extranjera.

D.P.R. 403 (2003), nos pronunciamos a los efectos de que una de las formalidades que es preciso consignar específicamente en un testamento es la relativa a la fe del conocimiento del testador, ya sea porque el notario lo conozca personalmente o por la comparecencia de testigos de conocimiento. La ausencia de esta formalidad conlleva la nulidad del instrumento público.

En la escritura de un testamento abierto autorizada por la licenciada Santiago Rodríguez, ésta identificó a los testigos instrumentales a través de documentos. Sin embargo, dado que dichos testigos comparecieron, a su vez, como testigos de conocimiento, resultaba necesario que la notaria los conociera personalmente y que diera fe de esta circunstancia, conforme lo requiere el Art. 634 del Código Civil, *supra*. La ausencia de esta formalidad vicia de nulidad absoluta al testamento. Aunque la querellada nos informó que conocía personalmente a la testadora porque anteriormente le había prestado sus servicios profesionales, ello no la exime de dar cumplimiento a los requisitos estatutarios para el otorgamiento de un testamento. *Deliz et als. v. Igartúa et als.*, supra. La querellada de autos se apartó del cumplimiento con los deberes que le impone nuestro ordenamiento en su función notarial y transgredió la fe pública de la que están investidos los notarios en nuestra jurisdicción.

Anteriormente hemos señalado que conducta semejante usualmente conlleva sanciones disciplinarias, principalmente cuando se afecta la eficacia del negocio jurídico. *In re Padilla Santiago*, 158 D.P.R. 787 (2003); *In re Capestany Rodríguez*, 148 D.P.R. 728, 733 (1998). Cabe señalar que el hecho de que la notaria incluyera la frase "doy fe que los testigos conocen la testadora y de mi conocimiento personal de los comparecientes en la forma de ley", no rectifica la grave deficiencia de la escritura, pues no aparecen las firmas de los comparecientes y se interrumpe la unidad de acto requerida en el otorgamiento de un testamento

abierto. Art. 649 del Código Civil de Puerto Rico, *supra*. No obstante, tomamos en consideración que la querellada llevó a cabo las diligencias necesarias para comunicarse con la familia de la testadora, que se ha comprometido a sufragar los gastos de cualquier procedimiento legal relacionado con el testamento y que al presente no se ha impugnado su validez.

## V

En virtud de lo expuesto en el acápite III de esta opinión, imponemos una fuerte censura a la Lcda. Elba Santiago Rodríguez por haber infringido el Canon 38 del Código de Ética Profesional, *supra*.

A tenor de lo resuelto en el acápite IV, *decretamos la suspensión la licenciada Santiago Rodríguez del ejercicio de la notaría por un término de treinta días. Además, la apercibimos de que conducta similar en el ejercicio de la abogacía y notaría en el futuro conllevará sanciones más severas. Las actuaciones de la querellada afectan la forma de impartir justicia en los tribunales.*

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Rebollo López concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Rivera Pérez no intervino.