EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:

Hon. Eduardo Grau Acosta | 2007 TSPR 170

172 DPR _____ |

Número del Caso: AD-2005-4

Fecha: 20 de septiembre de 2007

Oficina de Asuntos Legales de la Oficina de Administración de los Tribunales:

Lcda. María Victoria López Menéndez
Lcda. Julia María Badillo Lozano

Abogados de la Parte Querellada:

Lcdo. Carlos A. Alvarado Arroyo
Lcdo. José Luis Martínez Rodríguez
Lcdo. Jesús M. Jiménez

Materia: Destitución del cargo de Juez Superior y suspensión del ejercicio de la abogacía

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re

Hon. Eduardo Grau Acosta                    AD-2005-4

PER CURIAM

San Juan, Puerto Rico, a 20 de septiembre de 2007.

En el ejercicio de sus funciones, tanto los jueces como los abogados tienen la delicada encomienda de preservar el respeto y la confianza del Pueblo en nuestro sistema de justicia. Dicha encomienda requiere de los miembros de la Judicatura una conducta intachable que se caracterice por el más alto grado de imparcialidad e integridad y que responda a las normas que salvaguardan la independencia de su ministerio. Por otra parte, dicha responsabilidad conlleva que los abogados se esfuercen al máximo de su capacidad en la exaltación del honor y dignidad de la profesión.

A la luz de ello, el caso ante nuestra consideración es particularmente importante, ya que pone en "tela de juicio" la integridad de la conducta de uno de los miembros de nuestro sistema judicial por hechos ocurridos mientras ejercía la profesión de abogado y luego de entrar a ocupar el cargo de Juez en propiedad.  Pasemos a exponer los hechos relevantes según surgen del Informe de la Comisión de Disciplina Judicial (en adelante, la Comisión).

I

El Lcdo. Eduardo Grau Acosta (en adelante, Grau Acosta) fue admitido al ejercicio de la abogacía el 20 de mayo de 1975.  Más adelante, tras haber sido nombrado por el Gobernador y confirmado por el Senado de Puerto Rico, Grau Acosta prestó juramento como Juez Superior en el 1999.

Previo a su nombramiento, y mientras se desempeñaba como abogado en la práctica privada, Grau Acosta asumió la representación legal de la parte demandada en un pleito radicado ante el Tribunal de Guayama relacionado con la partición del caudal hereditario del Sr. José Gregorio Merle Reyes.  Inicialmente, Grau Acosta representaba a Heleodoro Merle Greo, Juanita Merle Rivera, Efraín Collazo y a la Sucesión de doña Luisa Merle Rivera, compuesta por los hermanos Buffil Merle.  No obstante, un tiempo después, Grau Acosta renunció a la representación legal de los hermanos Buffil Merle y asumió la de la Sra. Wilma Collazo Merle (en adelante, Collazo Merle), quien advino heredera al morir su señora madre, Juanita Merle Rivera.  Grau

Acosta acordó verbalmente con sus clientes que el pago por sus servicios sería el 15% del valor de los bienes que lograran obtener.

Transcurridos alrededor de veinte (20) años desde que se inició el litigio, el foro de instancia ordenó la partición de la herencia mediante la venta de los bienes del caudal. Para la fecha en que Grau Acosta juramentó como Juez Superior, ya se habían vendido algunos inmuebles pero quedaba pendiente la venta de unas fincas de gran cabida, para lo cual se requerían ciertos trámites tales como la mensura, el deslinde y la tasación.

Posteriormente, Grau Acosta presentó ante el tribunal una "Moción Renunciando y Asumiendo Representación Legal" suscrita con el Lcdo. Augusto Cirino Gerena, abogado de la parte demandante. Para ese entonces, Grau Acosta ya había comenzado a ejercer como Juez Superior en el Tribunal de Guayama. En la referida moción, Grau Acosta alegó que, por haber asumido el cargo de Juez, estaba impedido de continuar representando a los herederos demandados, por lo que el Lcdo. Cirino Gerena había aceptado ocuparse de ello. Asimismo, indicó que los herederos no tenían objeción a su renuncia ni a que la asumiera el referido letrado. En dicha moción, Grau Acosta identificó a los hermanos Buffil Merle como sus clientes —ello a pesar de que había renunciado a su representación legal desde el 1991— pero omitió mencionar a Collazo Merle, a quien representaba desde el año 1986.

La moción aludida nunca fue notificada a los herederos interesados y de su texto no se desprende información alguna sobre sus direcciones. A pesar de ello, en diciembre de 1999, el tribunal *a quo* aceptó la renuncia de Grau Acosta y autorizó la nueva representación legal del Lcdo. Cirino Gerena.

Según surge de las determinaciones de hechos de la Comisión, con posterioridad a la presentación de la moción Grau Acosta citó a Collazo Merle a su oficina y, por primera vez, le informó que no podía continuar representándola. Asimismo, le informó que había seleccionado al Lcdo. Cirino Gerena para que continuara con la gestión, ya que éste era su amigo y llevaba mucho tiempo en el caso. En esa ocasión, Grau Acosta le aclaró a Collazo Merle que, a pesar de que no podía continuar con su representación legal, tenía derecho a recibir el 15% de las ventas de los bienes del caudal hereditario y que él se ocuparía de pagarle los honorarios al Lcdo. Cirino Gerena. Tras adquirir conocimiento de lo ocurrido, Collazo Merle le solicitó al Lcdo. Cirino Gerena su renuncia a la representación legal, la cual fue presentada el 13 de enero de 2000.

En respuesta, Grau Acosta presentó una moción mediante la cual le indicó al tribunal que él había escogido al Lcdo. Cirino Gerena para que asumiera la representación legal de sus clientes con el fin de evitar que cada heredero escogiera a un abogado distinto y se complicara la

tramitación del caso. Además, en dicha moción Grau Acosta informó que había cumplido con la obligación de advertirles a sus clientes que la contratación del nuevo abogado no los relevaba del deber de pagarle el 15% del producto de las ventas del caudal. Finalmente, Grau Acosta solicitó que se dejara sin efecto la designación del Lcdo. Cirino Gerena como abogado de los demandados y pidió que se les requiriera informar su nueva representación legal, así como reconocer su derecho a los honorarios de abogado.

Más adelante, el tribunal de instancia celebró dos conferencias sobre el estado procesal del caso. De las minutas correspondientes se desprende que Grau Acosta compareció a una de ellas como abogado y, a la otra, como anterior representante legal de los demandados. De allí surge, además, que el tribunal emitió una orden dirigida a los demandados requiriéndoles comparecer con su nueva representación legal. No obstante, dicha orden se le notificó solamente a Collazo Merle, toda vez que en el expediente no había constancia de las direcciones de los demás co-demandados. Eventualmente, dichos co-demandados anunciaron al Lcdo. Ramiro Rodríguez Ramos como su nuevo representante legal.

Según surge del testimonio del Hon. Isidro Rivera Sánchez, Juez que presidía la Sala en la que se atendía el caso en cuestión, Grau Acosta compareció a las vistas mencionadas con el único propósito de proteger su interés en los honorarios de abogado. A pesar de que el caso se

encontraba pendiente ante el tribunal en el que Grau Acosta ejercía el cargo de Juez, éste nunca le informó al Juez Administrador que tenía un interés personal en el mismo.

A raíz de estos hechos, Collazo Merle presentó una queja en contra de Grau Acosta ante la Oficina de Administración de los Tribunales. Alegó que éste incurrió en conducta profesional antiética al encomendar a otro abogado la representación legal de sus clientes sin el conocimiento ni consentimiento de ellos. Sostuvo, además, que Grau Acosta actuó impropiamente al comparecer a los procedimientos para asegurarse de cobrar los honorarios de abogado, así como al no proveerle al tribunal las direcciones de los herederos que representaba. Finalmente, Collazo Merle adujo que Grau Acosta se negó a entregarle el expediente del caso, condicionando su entrega al pago de los honorarios, lo cual la obligó a pagar $660.50 para obtener una copia en el tribunal. Aclaró que, a pesar de ello, no logró recuperar ciertos documentos que sólo Grau Acosta poseía. El nuevo representante legal de los co-demandados, Lcdo. Rodríguez Ramos, reiteró los hechos indicados en la queja mencionada y le solicitó al tribunal que emitiera una orden dirigida a Grau Acosta para que cumpliera con la entrega del expediente.

En respuesta a las alegaciones indicadas, Grau Acosta sostuvo que decidió retener el expediente por desconocer la nueva representación legal de los demandados. Además, alegó que tan pronto se enteró de que sus anteriores

clientes estaban siendo representados por el Lcdo. Rodríguez Ramos, solicitó un término para fotocopiar el expediente y para defenderse de las quejas presentadas. Finalmente, Grau Acosta entregó el expediente el día 24 de marzo del 2003.

En el ínterin, Grau Acosta presentó una "Solicitud de Intervención" en el pleito sin permiso del Juez Administrador. En dicha solicitud alegó que tenía un interés en las propiedades y los asuntos del litigio, consistente en un 15% de lo que los herederos obtuvieran del caudal hereditario y que dicho interés podría quedar afectado de no concedérsele la intervención. Los demandados se opusieron a la intervención alegando que Grau Acosta pretendía litigar una reclamación de honorarios de abogado en un pleito de otra naturaleza. A pesar de la oposición, el tribunal de instancia autorizó la intervención, mas su dictamen fue revocado posteriormente[1].

Durante la investigación de la queja presentada, el Lcdo. Rodríguez Ramos prestó una declaración jurada ante la Oficina de Administración de los Tribunales, de la cual surgieron otras imputaciones de alegadas faltas éticas cometidas por Grau Acosta relacionadas con los hechos bajo nuestra consideración. En vista de ello, la Oficina de Administración de Tribunales consideró la referida declaración como una queja independiente.

---

[1] Véase Quiñonez Merle v. Merle Laboy, KLCE03-01609.

En la referida declaración jurada, el Lcdo. Rodríguez Ramos aseveró que en el año 2000 representó a unos demandados en un pleito entablado por Grau Acosta en su carácter personal. En vista de ello, el Lcdo. Rodríguez Ramos le solicitó a Grau Acosta su inhibición en los casos en que éste intervenía como Juez. Sin embargo, Grau Acosta se negó a inhibirse y a referir las solicitudes de inhibición al Juez Administrador para su consideración.

Por otra parte, el Lcdo. Rodríguez Ramos expresó que durante una vista presidida por Grau Acosta éste lo invitó a una reunión en su oficina. Decretado un receso del tribunal, y estando a solas en su oficina, Grau Acosta le indicó al licenciado que era "un traidor y un ingrato" por haber presentado las mociones de inhibición y por haber defendido a sus enemigos. Además, bajo la amenaza de que no ganaría ningún otro caso en su Sala, le expresó que tenía que retirar las referidas mociones de inhibición.[2]

Con posterioridad a esa reunión, el Lcdo. Rodríguez Ramos solicitó nuevamente la inhibición de Grau Acosta. Después de varios incidentes procesales, este Tribunal decretó la inhibición de Grau Acosta en todos los casos en que el Lcdo. Rodríguez Ramos así lo había solicitado[3].

A raíz de estos hechos y, luego de determinarse causa suficiente para continuar el procedimiento disciplinario,

---

[2] Esto fue lo que declaró el Lcdo. Rodríguez Ramos en la vista ante la Comisión, a lo que dicho organismo le dio entero crédito.

[3] Véase Alfredo Lind Flores v. Gerardo Cruz Morales, res. el 16 de octubre de 2003, 2003 TSPR 151.

la Oficina de Administración de los Tribunales presentó una Querella imputándole a Grau Acosta violación a los Cánones I, VIII, IX, XI, XII, XV, XVI, XXIII, XXVI de los de Ética Judicial de 1977 (vigentes al momento de los hechos), 4 L.P.R.A. Ap. IV-A; violación a los Cánones 19, 20, 21, 27 y 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX; y violación a las Reglas 19 y 20 de las Reglas para la Administración del Tribunal de Primera Instancia del Estado Libre Asociado de Puerto Rico de 1999.

En marzo de 2006, Grau Acosta contestó la querella negando los cargos imputados y planteando varias defensas afirmativas. Más tarde, presentó una moción solicitando la desestimación de la querella por incumplimiento con el requisito de notificación y por no haberse realizado la investigación dentro del término establecido.

La Comisión declaró sin lugar tanto la referida moción como una solicitud de reconsideración oportunamente presentada. En vista de ello, Grau Acosta recurrió ante este Tribunal mediante recurso de *certiorari* y solicitó la paralización de los procedimientos ante la Comisión. Ambos recursos fueron denegados en esa etapa de los procedimientos.

Luego de celebradas las vistas correspondientes, la Comisión presentó un Informe en el cual determinó que Grau Acosta infringió las normas éticas imputadas, así como la Regla 19 de las Reglas para la Administración del Tribunal de Primera Instancia.

Con este trasfondo fáctico y procesal en mente, pasemos al análisis del derecho aplicable.

II

A

Los Cánones de Ética Judicial recogen unas normas mínimas de conducta dirigidas a asegurar una conducta ejemplar de parte de los miembros de la Judicatura, lo cual tiene como propósito –entre otras cosas– preservar la confianza del pueblo en el sistema judicial. A manera de preámbulo, el Canon I de los de Ética Judicial consagra dicho objetivo al establecer que los tribunales y, por ende, las personas encargadas de la alta encomienda de ser magistrados, tienen el deber de mantener la fe del pueblo en la justicia. A tales efectos, establece que las personas llamadas a impartir justicia deben velar porque sus actuaciones respondan a normas de conducta que honren la integridad e independencia de su ministerio. Ello supone un comportamiento por parte de todos los jueces y juezas que manifieste entereza, convicción e imparcialidad tanto en su vida pública como en su vida privada. 4 L.P.R.A. Ap. IV-A, C. I; In re Yamil Suárez Marchán, res. 30 de junio de 2003, 2003 TSPR 115; In re Marrero Torres, 113 D.P.R. 113 (1982).

A tono con lo anterior, el Canon XI requiere no sólo una conducta efectivamente imparcial de parte de los miembros de la Judicatura, sino además la exclusión de toda posible apariencia de imparcialidad. Resulta claro, por

tanto, que cada juez tiene que considerar las posibles consecuencias de sus actos en términos de las impresiones que podrían recibir terceras personas. Además, debe cuidarse de situaciones que puedan afectar negativamente su imagen o poner en duda la independencia de su criterio. 4 L.P.R.A. Ap. IV-A, C. XI.

El deber de desempeñar la función judicial mediante una conducta imparcial es inherente a la misión de impartir justicia. A tales efectos, anteriormente hemos sido enfáticos al afirmar que la investidura judicial obliga a un juez a despojarse de todo vínculo -sea de índole político, familiar o de otro género- que pudiera arrojar dudas sobre su capacidad para adjudicar las controversias de manera imparcial. In re Ramos Mercado, res. el 27 de febrero de 2007, 2007 TSPR 32.

En aras de asegurar dicha imparcialidad, tanto de hecho como en apariencia, el Canon XII señala a manera ilustrativa varias situaciones en las que es propio que un juez se inhiba del proceso judicial, ya sea por existir un prejuicio o parcialidad hacia cualquier persona en el pleito, o para evitar la apariencia de ello. En esos casos, y "[p]or cualquier otra causa que pueda razonablemente arrojar dudas sobre su imparcialidad para adjudicar o que tienda a minar la confianza pública en el sistema de justicia", el juez debe abstenerse de participar en el procedimiento tan pronto conozca la causa de

inhibición. 4 L.P.R.A. Ap. IV-A, C. XII; In re Campoamor Redín II, 150 D.P.R. 138 (2000).

De forma similar, el Canon XXIII le impone a cada juez el deber de evitar toda conducta que pueda dar base a la creencia de que ejerce influencia indebida en el ánimo de otro juez. Precisamente, dicho Canon prohíbe que un juez ejerza, o de la apariencia de ejercer, alguna influencia para colocarse en mejor posición que cualquier otro ciudadano en el litigio de sus causas personales. 4 L.P.R.A. Ap. IV-A, C. XXIII.

Finalmente, el Canon XV dispone que los jueces no pueden celebrar entrevistas privadas con las partes o sus abogados. Tampoco pueden permitir comunicaciones o argumentos con el fin de influenciar su actuación judicial en asuntos bajo su consideración, cuando los intereses que puedan estar afectados no estén debidamente representados. 4 L.P.R.A. Ap. IV-A, C. XV.

Las disposiciones antes mencionadas reflejan un interés legítimo —y de gran envergadura— en salvaguardar la fe en la Judicatura. Para ello se exige que los jueces actúen de manera prudente, proyectando una imagen de imparcialidad y objetividad. En ese sentido, anteriormente hemos llamado a la cautela cuando los jueces se ven obligados a participar como parte en un procedimiento judicial, toda vez que los demás litigantes pueden sentirse en una posición desventajosa.

Por otra parte, el Canon VIII establece que lo jueces no deben aceptar posiciones, cargos o encomiendas que sean incompatibles con las responsabilidades judiciales y deben evitar, entre otras cosas, las actividades que le resten dignidad a la posición de juez y aquellas que pongan en entredicho la imparcialidad de la Judicatura. 4 L.P.R.A. Ap. IV-A, C. VIII.   A tono con ello, los jueces están impedidos de ejercer la abogacía. 4 L.P.R.A. 24(p); 4 L.P.R.A. Ap. IV-A, C. IX.

Además, el Canon XVI requiere que los jueces, al llevar a cabo sus funciones, sean considerados y respetuosos con los abogados y con las otras personas que comparezcan ante el tribunal. 4 L.P.R.A. Ap. IV-A, C. XVI.

Finalmente, el Canon XXVI dispone, a manera de epílogo, que los Cánones de Ética Judicial son normas mínimas de comportamiento que los jueces deben observar fielmente, tanto en su letra como en su espíritu. Igualmente, dicho Canon hace aplicables a los jueces cualesquiera otras normas de conducta establecidas por ley que de alguna forma salvaguarden la dignidad del cargo y la independencia judicial. 4 L.P.R.A. Ap. IV-A, C. XXVI.

### B.

Por otro lado, es un deber consustancial al cargo de juez cumplir también con la ley, los postulados éticos que rigen el ejercicio de la abogacía y las normas administrativas aplicables. Conforme a ello, en un procedimiento disciplinario contra un magistrado, este

Tribunal está facultado para evaluar su conducta a la luz de los preceptos indicados e imponer las medidas disciplinarias que correspondan[4]. De hecho, en In re Elba Santiago Rodríguez, res. el 20 de agosto de 2003, 2003 TSPR 137, indicamos que el nombramiento, confirmación y juramentación como juez de un licenciado en derecho no lo releva de su responsabilidad como abogado o notario. En vista de ello, en esa ocasión sancionamos a la querellada en su carácter de notario por incumplir con la Ley Notarial mientras ejercía el cargo de Jueza Municipal.

La facultad disciplinaria mencionada resulta aún más evidente en el caso ante nuestra consideración, toda vez que a Grau Acosta se le imputaron varias faltas éticas por hechos ocurridos mientras se desempeñaba como abogado antes de su nombramiento como Juez Superior y después de ocupar ese cargo en propiedad. Específicamente, se le imputó violación a los Cánones 19, 20, 21, 27 y 35 del Código de Ética Profesional y violación a las Reglas 19 y 20 de las Reglas para la Administración del Tribunal de Primera Instancia. Pasemos a examinar dichos preceptos.

El Canon 20 de los de Ética Profesional requiere que, antes de renunciar a la representación legal, el abogado tome aquellas medidas razonables que evitan perjuicio a los derechos de su cliente. Estas medidas incluyen notificarle la renuncia; aconsejarle debidamente sobre la necesidad de una nueva representación legal cuando ello sea necesario;

---

[4] Véase la Regla Núm. 3 de las Reglas de Disciplina Judicial del Tribunal Supremo de Puerto Rico.

concederle tiempo para conseguir una nueva representación legal; aconsejarle sobre la fecha límite de cualquier término de ley que pueda afectar su causa de acción o para la radicación de cualquier escrito que le pueda favorecer; y el cumplimiento de cualquier otra disposición legal del tribunal al respecto, incluyendo la notificación de la última dirección conocida de su representado.

Con relación a ello, la Regla 19 de las Reglas para la Administración del Tribunal de Primera Instancia dispone que el abogado debe certificar en la propia solicitud que le ha notificado a los clientes su intención de renunciar. Además, dispone que el abogado le debe proveer al tribunal las direcciones residenciales y postales del abogado y de la parte representada, así como los números de teléfono correspondientes. 4 L.P.R.A. Ap. II-B, R. 19.

El Canon 20 también requiere que, al ser efectiva la renuncia, el abogado le entregue a su cliente el expediente del caso y todo documento relacionado con el mismo. A su vez, exige que el abogado reembolse inmediatamente cualquier cantidad adelantada en concepto de honorarios por servicios no prestados. 4 L.P.R.A. Ap. IX C. 20. En relación con dicha norma, hemos resuelto que el abogado no tiene un derecho de retención sobre el expediente del caso y que tampoco existe un gravamen sobre el mismo cuando no se han pagado los honorarios correspondientes. In re Vélez, 103 D.P.R. 590 (1975).

De otra parte, conforme establece el Canon 35, los abogados deben desplegar una conducta sincera y honrada ante los tribunales, para con sus representados y en las relaciones con sus compañeros. Por ende, un abogado que falta a la verdad infringe dicho precepto, independientemente de los motivos que lo movieron a incurrir en esa conducta o de que no se hubiera perjudicado a tercero alguno. 4 L.P.R.A. Ap. IX C. 35; In re Martínez, Odell I, 148 D.P.R. 49 (1999). A tales efectos, hemos expresado que el compromiso de un abogado con la verdad debe ser siempre incondicional, ello debido a que "más que un ideal irrealizable, la verdad es atributo inseparable del ser abogado". In re Busó Aboy, res. el 26 de octubre de 2005, 2005 TSPR 162.

Además, sabido es que el abogado tiene para con su cliente un deber de lealtad completa, el cual incluye la obligación de divulgarle todas las circunstancias de sus relaciones con las partes y con terceras personas, así como cualquier interés en la controversia que pudiera influir en el cliente al seleccionar su consejero. 4 L.P.R.A. Ap. IX C. 21. Igualmente, el abogado tiene el deber de mantener a su cliente informado de todo asunto importante que surja en el desarrollo del caso. 4 L.P.R.A. Ap. IX C. 19. Cónsono con ello, resulta impropio que un abogado se asocie con otro en la defensa de un cliente sin obtener previamente su consentimiento. 4 L.P.R.A. Ap. IX C. 27.

A la luz de estos principios, evaluemos los hechos de este caso para determinar si Grau Acosta incurrió en las violaciones imputadas.

III

En otras ocasiones hemos enfatizado que la función judicial es una de las labores cuyo ejercicio no admite términos medios. Para preservar la dignidad de los procedimientos judiciales y la confianza del pueblo en la administración de la justicia, se requiere que los jueces actúen –y promuevan la impresión de que actúan– con rectitud y conforme a los más altos niveles éticos que rigen el ejercicio de ese cargo.

Como expusimos antes, existe una incompatibilidad absoluta entre el desempeño del cargo de juez y el ejercicio de la abogacía. Ahora bien, la nominación por parte del Gobernador constituye la etapa inicial del proceso de nombramiento al cargo judicial, ya que puede ocurrir que el Senado no preste su consentimiento. Por ende, en ese momento la persona nominada que es abogado todavía no está obligada a renunciar a la representación legal de sus clientes. Sin embargo, cuando el Senado confirma el nombramiento y el abogado tiene la intención de ocupar el cargo –aproximándose el momento en que va a juramentar como juez– surge la obligación de renunciar a cualquier representación legal que ostente.

Según se desprende del expediente, Grau Acosta se desempeñaba como abogado cuando fue nominado para el cargo

de Juez Superior.  A pesar de que éste juramentó como Juez Superior el 8 de noviembre de 1999 e inmediatamente después empezó a ejercer sus funciones como tal, no fue hasta el 3 de diciembre de 1999 que solicitó la renuncia a la representación legal de sus clientes.  Por ende, resulta forzoso concluir que Grau Acosta no renunció oportunamente a dicha representación.

Dado el carácter tardío de su renuncia, en ese momento Grau Acosta técnicamente aún era abogado y, por ende, no estaba relevado de sus responsabilidades como tal. Por esta razón, estamos en posición de ejercer también nuestra función disciplinaria con respecto a la conducta de Grau Acosta como abogado.

En primer lugar, la moción de renuncia presentada por Grau Acosta adolece de varios defectos que constituyen graves faltas éticas.  Éste alegó que sus clientes no tenían objeción alguna a su renuncia ni a que el Lcdo. Cirino Gerena asumiera la representación legal.  Sin embargo, antes de presentar la referida moción, Grau Acosta no discutió ese asunto con sus clientes; no les informó previamente de su intención de renunciar y no fue hasta varios meses después que cumplió con tal deber.  Este proceder constituye una clara violación al Canon 20 de los de Ética Profesional.

Aún más, sin haberlo discutido con sus clientes, Grau Acosta seleccionó al Lcdo. Cirino Gerena —quien era además abogado de la parte contraria— para que asumiera la

representación legal de éstos.  De esa manera, Grau Acosta faltó a la verdad e infringió el deber de lealtad hacia sus clientes. Su actuación fue contraria a los preceptos éticos imputados y socavó la naturaleza personal y fiduciaria de la relación abogado-cliente, creando además una situación de evidente conflicto de interés.  En este aspecto, la justificación aducida por Grau Acosta de que él escogió al nuevo abogado para evitar que se complicara la tramitación del caso, resulta a todas luces carente de méritos.

Aparte de lo anterior, la moción de renuncia nunca fue notificada a los herederos interesados y de su texto no se desprende información alguna sobre sus direcciones, todo ello en abierta violación al Canon 20 de Ética Profesional y a la Regla 19 de las Reglas para la Administración del Tribunal de Primera Instancia, la cual regula la tramitación de ese tipo de solicitud[5].  Grau Acosta tampoco cumplió con el deber de informar las direcciones de sus clientes en un momento posterior.  Esto causó que no se les pudieran notificar varias órdenes emitidas por el tribunal, lo cual dilató innecesariamente los procedimientos.

Por otra parte, después de ser efectiva su renuncia a la representación legal, Grau Acosta retuvo indebidamente el expediente del caso a pesar de que sus clientes lo solicitaron en varias ocasiones.  Además, en contravención

---

[5] Es oportuno señalar que en la Querella también se le imputó a Grau Acosta violación a la Regla 20.  No obstante, la Comisión determinó que no hubo infracción a dicha disposición por entender que la misma resulta inaplicable a los hechos de este caso. Coincidimos con esa determinación y, por ende, no analizaremos dicha regla.

a lo señalado por este Tribunal, Grau Acosta condicionó la entrega del expediente al pago de los honorarios de abogado. No fue hasta que el foro de instancia así lo ordenó que finalmente Grau Acosta devolvió el expediente del caso. Este comportamiento produjo gastos innecesarios para los clientes (ya que tuvieron que pagar para obtener una copia del expediente en el tribunal), así como una dificultad objetiva a la hora de defenderse.

Las excusas ofrecidas por Grau Acosta no justifican su comportamiento. En particular, resulta inaceptable el argumento de que él desconocía a quién entregarle el expediente. De hecho, aun después de conocer que el Lcdo. Rodríguez Ramos había asumido la representación legal de sus ex-clientes, Grau Acosta tampoco entregó inmediatamente el expediente, sino que solicitó un término adicional para fotocopiarlo.

Las circunstancias de este caso demuestran que Grau Acosta actuó en todo momento movido por el único propósito de asegurar el cobro de sus honorarios de abogado. Ofuscado por ese interés económico, perdió de perspectiva la importancia de su profesión y sus deberes como abogado, incurriendo así en violación a los Cánones 19, 21, 27 y 35 de los de Ética Profesional.

A su vez, con su comportamiento Grau Acosta dejó a un lado los preceptos éticos que gobiernan la conducta de los miembros de la Judicatura. Sin duda, éste actuó impropiamente al comparecer ante el Tribunal de Guayama en

calidad de abogado de la parte demandada y después en su carácter personal. Dado que en ese momento ya era efectiva su renuncia a la representación legal de los demandados y, toda vez que estaba ejerciendo su cargo como Juez Superior en ese mismo tribunal, Grau Acosta tenía el deber de informarle al Juez Administrador su interés personal en el caso para que éste dispusiera el traslado administrativo del mismo, conforme lo establecen las Reglas de Administración de los Tribunales. Sin embargo, Grau Acosta no sólo omitió informar la situación, sino que también intervino en el pleito sin permiso de su supervisor y dentro del horario regular de trabajo. Dicha conducta es incompatible con sus responsabilidades judiciales y da margen a la creencia de que estuvo ejerciendo influencia indebida en el ánimo del juez que presidía el caso. Reiteramos que la imparcialidad en el ejercicio de las funciones judiciales es un factor tan esencial para fortalecer la confianza de la ciudadanía en la Judicatura que aún la apariencia de ello puede ser muy perniciosa y, por ende, debe ser evitada por todo miembro de la Judicatura.

Finalmente, nos preocupa seriamente la conducta que Grau Acosta desplegó en relación al Lcdo. Rodríguez Ramos. Grau Acosta declinó inhibirse en unos casos ante su consideración, a pesar de que el licenciado había presentado varias solicitudes a esos efectos. Dichas solicitudes se fundaban en el hecho de que Grau Acosta era

parte en su carácter personal en un pleito en el cual el Lcdo. Rodríguez Ramos era el abogado de la parte contraria. Ante esas circunstancias, Grau Acosta debió inhibirse de la adjudicación de tales casos. La posición conflictiva en que éste se encontraba en tales casos, sin duda, arroja dudas sobre su capacidad para actuar imparcialmente en la adjudicación de los mismos. De hecho, así lo decidió este Tribunal con anterioridad cuando se le planteó el asunto.

Más aún, la Comisión determinó que Grau Acosta amenazó al Lcdo. Rodríguez Ramos con que no ganaría casos en su Sala si no retiraba las referidas mociones de inhibición. Siendo ésta una determinación de credibilidad, y en vista de que no existen elementos en el expediente que nos induzcan a modificarla, no alteraremos la misma. Véase In re Moreira Avillán, 147 D.P.R. 78 (1998); In re Soto López, 135 D.P.R. 642 (1994). Sin duda, al amenazar al Lcdo. Rodríguez Ramos, Grau Acosta no sólo usó sus prerrogativas judiciales para propósitos personales, sino que además abusó de sus funciones para manipular el curso regular de los procedimientos. Al actuar de esa manera, Grau Acosta no desempeñó la función judicial de manera imparcial e íntegra como lo requieren los preceptos éticos y, particularmente, incumplió con el deber de imparcialidad que es inherente a la misión de dispensar justicia.

En vista de lo anterior, concluimos que Grau Acosta incurrió en conducta lesiva a las normas éticas esenciales que regulan el proceder de todo magistrado en nuestra

sociedad. Sin duda, dicho comportamiento resulta altamente impropio y proyectó una imagen distorsionada de lo que debe ser un buen administrador de la justicia.

Como garante del buen funcionamiento del sistema judicial, y a los fines de estimular el respeto y la confianza en el mismo, este Tribunal debe ser estricto al exigir de los jueces el cumplimiento de los preceptos éticos que regulan su conducta. En el caso de autos no albergamos duda de que el querellado actuó de forma incompatible con las normas de conducta que rigen el descargo de la función judicial. Ante la gravedad de las faltas éticas cometidas por Grau Acosta, entendemos necesario decretar como sanción su destitución del cargo de Juez.

Por otro lado, tal como indicamos antes, entendemos que Grau Acosta tampoco cumplió con los parámetros éticos básicos que rigen el ejercicio de la abogacía. Grau Acosta atentó contra el principio de honradez y lealtad que distingue la relación abogado-cliente, dejando a un lado el carácter fiduciario que ésta conlleva. De igual forma, faltó a la verdad ante el tribunal y violó el deber de información que tenía para con sus clientes. En lugar de procurar los intereses de éstos, Grau Acosta actuó en todo momento movido por consideraciones personales de tipo económico. Ello, sin duda, pone de manifiesto la ausencia de rectitud en la conducta de Grau Acosta, así como la gravedad de las faltas éticas cometidas. En vista de ello,

concluimos que procede su suspensión indefinida del ejercicio de la abogacía.

IV

Por los fundamentos que preceden, y conforme a la facultad que nos confiere el Art. V, Sec. 11 de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, decretamos la destitución inmediata del Lcdo. Eduardo Grau Acosta del cargo de Juez Superior y su suspensión indefinida del ejercicio de la abogacía.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


In re

Hon. Eduardo Grau Acosta                    AD-2005-4






SENTENCIA


San Juan, Puerto Rico a 20 de septiembre de 2007.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte íntegra de la presente, se decreta la destitución inmediata del Lcdo. Eduardo Grau Acosta del cargo de Juez Superior y su suspensión indefinida del ejercicio de la abogacía.

Así lo pronuncia y manda el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. Los Jueces Asociados señores Rebollo López y Fuster Berlingeri no intervinieron.


Dimarie Alicea Lozada
Secretaria del Tribunal Supremo Interina